[Nos. G013294, G013329. Fourth Dist., Div. Three. May 26, 1993.]

JAVIER BARAJAS et al., Plaintiffs and Appellants, v.
CITY OF ANAHEIM, Defendant and Respondent.

COUNSEL

Salvador Sarmiento, Vibiana Andrade and Birgit Seifert for Plaintiffs and Appellants.

Jack L. White, City Attorney, Anthony G. Stashik and Malcolm E. Slaughter, Deputy City Attorneys, for Defendant and Respondent.

OPINION

**CROSBY, J.**—Does the Vehicle Code preempt an ordinance enacted by a charter city to ban vending from vehicles parked on public streets in residential areas? *Yes.*

I

Per the allegations of the complaint, plaintiffs are street vendors licensed by the City of Anaheim. All have sold produce from vehicles on streets in residential areas for at least seven years, some many years longer.

In the summer of 1992, the Anaheim City Council approved Ordinance No. 5330, which substantially amended title 14, chapter 14.32, section 14.32.310 of the Anaheim Municipal Code. At issue is the addition of subsection .015 to section 14.32.310. It reads, "It is unlawful for any person to sell or offer for sale, or operate any vehicle or conduct any business for the purpose of causing the sale of or offering for sale, any goods or merchandise from any vehicle which is either (i) parked, stopped, or standing upon any public street, alley, parkway, sidewalk, or other public property, within any residential zone of the City of Anaheim, or (ii) located upon any public street at any location where either side of the portion of such public street upon which such vehicle is located abuts upon or is contiguous to any lot or parcel of property which is zoned or used for residential purposes."[1]

Plaintiffs, claiming enforcement of the ordinance will destroy their livelihoods, sued for declaratory and injunctive relief. They alleged the ordinance

---

[1]The council had its sights on produce vendors; but it appears the broadly drawn ordinance could also be enforced against a wide variety of targets, such as C.O.D. delivery services, ice cream trucks, bottled water companies, water softener suppliers, plumbers, landscapers, roofers, pizza deliverers, brush salespeople, and motorized drummers of all descriptions. The United States Postal Service would violate the ordinance every time it delivered stamps ordered by a residential patron to a sidewalk mailbox by means of a postal van.

At oral argument, the city's attorney sought to distinguish other vendors on the basis that their sales take place on the customer's lawn or at the front door, as opposed to the curb, and are consequently not prohibited under the revised ordinance. The distinction does not work

infringes upon an area of statewide concern, the regulation of which is preempted by the California Vehicle Code, and violates an array of constitutional rights.

Citing *Amezcua* v. *City of Pomona* (1985) 170 Cal.App.3d 305 [216 Cal.Rptr. 37], a decision upholding a municipal ban on nonmotorized pushcarts, the superior court refused to issue a preliminary injunction: "I cannot find any distinction between the facts of this case and the facts of *Amezcua*. . . . [S]o far as the principles of law articulated in *Amezcua*[,] I think this case is on all fours with it." ██ ██ Plaintiffs noticed an appeal (G013329) and petitioned this court for a writ of supersedeas (G013294). We treated the petition for writ of supersedeas as a petition for an appellate injunction to bar enforcement of the ordinance and ordered that it issue.[2] Having heard oral argument, we now conclude reversal is compelled.

---

with some of our examples, though, and seems contrived and unsupported by a plain reading of the ordinance. It appears the city fully intends to enforce it in a discriminatory manner.

Did Walt Disney's studio begin in a residential garage and Carl's Jr. Restaurants originate with pushcart vending? If our memories serve, it is surely ironic that a citadel of capitalist success, such as Anaheim, would attempt to banish these small businesses from most of the city.

[2]Claiming plaintiffs' counsel committed a host of peccadillos, defendant insists the appeal must be dismissed. The arguments will be disposed of summarily in this footnote. This court, unlike the city, is not confused by the use of "et al." to designate as appellants *all* plaintiffs in addition to the lead individual, Javier Barajas. One plaintiff is enough in any event. The city cannot enforce preempted ordinances against the world, excepting only those stalwart souls who go to the expense and trouble of obtaining declaratory relief.

Yes, as the city complains, plaintiffs failed to file the proper notice requesting preparation of a 10-page reporter's transcript for the October 16, 1992, preliminary injunction hearing; and they concede the error. Nevertheless, everyone has now had the transcript for months. No prejudice is claimed, no mistakes in the transcript are asserted, and no delay has occurred. In short: no harm, no foul.

Next, citing rule 48(b) of the California Rules of Court, the city seeks dismissal of the appeal because plaintiffs' trial attorney, who is attorney of record on appeal, did not personally sign the opening brief; that was accomplished by cocounsel. We do not read rule 48(b) to prevent a cocounsel from signing a brief, nor would such a rule make much sense in the modern practice of law, which is often a team effort. More to the point, we have not located *any* rule that requires counsel to even sign an appellate brief. The argument is frivolous, a waste of this court's time, and unworthy of any litigant, particularly a public entity.

Moving from the frivolous to the ridiculous, defendant argues we should dismiss the appeal because it is "unable to find" a statement of appealability in the opening brief. (Rule 13, Cal. Rules of Court.) On pages 1 and 2 of the opening brief, plaintiffs explain the superior court entered an order denying their request for a preliminary injunction. Per Code of Civil Procedure section 904.1, subdivision (f), that is sufficient to establish appealability.

Finally, dismissal is compelled, contends Anaheim, "because [plaintiffs] seek[ ] injunctive relief where an adequate legal remedy is available." It cites *Planned Parenthood Affiliates* v. *Van de Kamp* (1986) 181 Cal.App.3d 245 [226 Cal.Rptr. 361] as support for this contention. But that opinion approved the use of an exceptional procedure for an exceptional case. And

■ A preliminary injunction is appropriate where a plaintiff is likely to prevail at trial and failure to provide interim relief will cause irreparable harm. In this case the superior court mistakenly determined plaintiffs had little likelihood of success and denied the request for a preliminary injunction without reaching the issue of irreparable harm. But plaintiffs must prevail as a matter of law; and because the record demonstrating irreparable harm is clear and unrebutted,[3] the judgment must be reversed.

## II

■ Anaheim is a charter city. Under the "home rule" doctrine, California's Constitution reserves to charter cities the right to adopt and enforce ordinances that conflict with general state laws, provided the subject of the regulation is a "municipal affair" rather than one of "statewide concern." (*Johnson* v. *Bradley* (1992) 4 Cal.4th 389, 399 [14 Cal.Rptr.2d 470, 841 P.2d 990];[4] Cal. Const. art. XI, § 5.)

Home rule is tempered by the preemption doctrine, the application of which requires a two-step analysis: First, a court must determine whether there is a genuine conflict between a state statute and a municipal ordinance. (See, e.g., *Johnson* v. *Bradley, supra,* 4 Cal.4th at pp. 400-401; *California Fed. Savings & Loan Assn.* v. *City of Los Angeles* (1991) 54 Cal.3d 1, 16-17 [283 Cal.Rptr. 569, 812 P.2d 916].) Only after concluding there is an actual conflict should a court proceed with the second question; i.e., does the local legislation impact a municipal or statewide concern?

■ There are several components to the conflict test: "A conflict exists if the local legislation duplicates, contradicts, or enters an area fully occupied by general law, either expressly or by legislative implication." (*Sherwin-Williams Co.* v. *City of Los Angeles* (1993) 4 Cal.4th 893, 897 [16 Cal.Rptr.2d 215, 844 P.2d 534], internal quotation marks omitted.) The *Sherwin-Williams* court went on to explain, "Local legislation is duplicative of general law when it is coextensive therewith. [Citation.] [¶] Similarly, local legislation is contradictory to general law when it is inimical thereto. [Citation.] [¶] Finally, local legislation enters an area that is fully occupied

*Planned Parenthood Affiliates* did not purport to provide the sole remedy for matters of this type. Plaintiffs have no adequate remedy at law in our view; loss of their livelihoods, in whole or in part, would be extremely difficult to evaluate in terms of damages.

[3]The city has identified six "health and safety" problems associated with street vending from vehicles in residential areas, including congestion, litter, increased number of citizen complaints, noise pollution from vendors' horns, double parking, and "camping out" by vendors who spend all day in one location. Nevertheless, despite Vehicle Code section 22455 (see pt. III, *post*), Anaheim concedes it has not enacted any public safety *regulations* for street vending.

[4]*Johnson* details the history of the home rule doctrine.

by general law when the Legislature has expressly manifested its intent to fully occupy the area [citation], or when it has impliedly done so in light of one of the following indicia of intent: (1) the subject matter has been so fully and completely covered by general law as to clearly indicate that it has become exclusively a matter of state concern; (2) the subject matter has been partially covered by general law couched in such terms as to indicate clearly that a paramount state concern will not tolerate further or additional local action; or (3) the subject matter has been partially covered by general law, and the subject is of such a nature that the adverse effect of a local ordinance on the transient citizens of the state outweighs the possible benefit to the locality [citations]." (*Id.* at pp. 897-898, internal quotation marks omitted.)

### III

This background set forth, our first task is to determine whether subsection .015 of section 14.32.310 of the Anaheim Municipal Code, which purports to ban street vendors from parking on public streets within Anaheim's city limits, conflicts with Vehicle Code section 22455. As originally enacted in 1984, section 22455 declared, "(a) The driver of any commercial vehicle engaged in vending upon a street may vend products on a street in a residence district only after bringing the vehicle to a complete stop and lawfully park[ing] adjacent to the curb, consistent with the requirements of Chapter 9 (commencing with Section 22500) and local ordinances adopted pursuant thereto. [¶] (b) A local authority may, by ordinance or resolution, adopt additional requirements for the public safety regulating any type of vending from vehicles upon any street. *An ordinance or resolution adopted pursuant to this subdivision may prohibit vending from a vehicle upon a street.*" (Italics added.) Section 22455 was amended the following year to eliminate the italicized sentence.

Plaintiffs insist the Legislature's withdrawal of the express authorization to local governments to prohibit street vending from vehicles in residential areas means that while cities and counties are free to *regulate* that activity, they are no longer entitled to *ban* it. Our agreement is compelled by a host of Supreme Court decisions.

It has long been "presumed that the Legislature by deleting an express provision of a statute intended a substantial change in the law." (*People* v. *Valentine* (1946) 28 Cal.2d 121, 142 [169 P.2d 1]; see also *People* v. *Thomas* (1992) 4 Cal.4th 206, 211 [14 Cal.Rptr.2d 174, 841 P.2d 159]; *People* v. *Dillon* (1983) 34 Cal.3d 441, 467 [194 Cal.Rptr. 390, 668 P.2d 697].) Also, "the Legislature is deemed to be aware of existing laws and judicial decisions in effect at the time legislation is enacted and to have

enacted and amended statutes in the light of such decisions as have a direct bearing upon them." (*People* v. *Overstreet* (1986) 42 Cal.3d 891, 897 [231 Cal.Rptr. 213, 626 P.2d 1288], internal quotation marks omitted.) These decisions say it all; no further analysis is necessary.

 Moreover, statutory amendments take on an added significance where the Vehicle Code is concerned. Courts have invariably held, "The delegation to local authorities of power to make vehicular traffic rules and regulations will be *strictly construed,—*such authority must be *expressly (not impliedly)* declared by the Legislature."[5] (*City of Lafayette* v. *County of Contra Costa* (1979) 91 Cal.App.3d 749, 756 [154 Cal.Rptr. 374], internal quotation marks omitted.) We have found no reported judicial decision or opinion by this state's Attorney General that has sanctioned an implied legislative grant of authority to local agencies on any subject that is touched upon in the Vehicle Code; quite the opposite. We must assume the Legislature was cognizant of this consensus in 1985 when it eliminated the authority of local agencies to ban street vending from vehicles in residential areas.

We could recite numerous examples. But only a few should be sufficient to illustrate the uniform flavor of the pertinent case law.

In *City of Lafayette* v. *County of Contra Costa, supra,* 91 Cal.App.3d 749, a city council decided to reduce traffic on a particular street by installing a gate and issuing access cards to local residents only. Because Vehicle Code section 21101, subdivision (a) expressly gave the city authority to *close* " 'any highway to vehicular traffic when in the opinion of the legislative body having jurisdiction the highway is no longer needed for vehicular traffic' " (91 Cal.App.3d at p. 756), the city argued the statute "necessarily *implie[d]* authority to *partially* close it, upon a finding that it is no longer needed for some of the vehicles which customarily use it." (*Ibid.*) The Court of Appeal disagreed, observing the city's contention was "contrary to law, and to the clear language of [section 21101, subdivision (a)]." (*Id.* at p. 757.)

Similarly, *Rumford* v. *City of Berkeley* (1982) 31 Cal.3d 545 [183 Cal.Rptr. 73, 645 P.2d 124], involved a city's effort to divert traffic by erecting several types of barriers. Proponents of the barriers argued they were not "traffic control devices" subject to Vehicle Code section 440 and were proper under the city's express authority under Vehicle Code section 21101, subdivision (a) to " 'close' a street it concludes is 'no longer needed for

---

[5]The Supreme Court has described this "familiar rule of construction" by its Latin rubric, "*expressio unius est exclusio alterius*: Where exceptions to a general rule are specified by statute, other exceptions are not to be implied or presumed." (*Wildlife Alive* v. *Chickering* (1976) 18 Cal.3d 190, 195 [132 Cal.Rptr. 377, 553 P.2d 537].)

vehicular traffic.' " (31 Cal.3d. at p. 549.) Emphasizing "the rule that delegations of power to cities regarding vehicular traffic will be strictly construed [citation], as well as the rule of construction that words normally should be read for their 'plain meaning' " (*id.* at p. 553), the Supreme Court followed *Lafayette*'s lead and reiterated that courts will not imply any authority not expressly granted in the Vehicle Code.

The Attorney General has published more than a few opinions that deal with this now-familiar theme. For example, after reviewing the several legislative changes to Vehicle Code section 22507,[6] the Attorney General concluded, "Nowhere in section [22507] has the Legislature expressly, nor impliedly, and in unmistakable language permitted local authorities to designate a particular class of vehicle, whether by type or size, solely to prohibit its parking in residential areas. Accordingly, we conclude that the section does not provide a basis for them to do so." (73 Ops.Cal.Atty.Gen. 13, 24-25 (1990).)

The same opinion also tackled several questions concerning Vehicle Code section 22507.5.[7] Insofar as a city's authority to ban overnight parking, the Attorney General observed, "While the section might authorize a city to prohibit *all vehicles* from parking overnight on 'certain streets or highways' in residential areas, it would not provide them authority to apply that restriction only to particularly designated types of vehicles. As with section 22507, any overnight parking restriction imposed for the streets of residential areas would have to equally apply to all vehicles that might park there, or to none." (73 Ops.Cal.Atty.Gen., *supra*, at p. 27.)

The Attorney General's conclusions concerning a city's authority to ban the parking of commercial vehicles with a gross minimum weight of 10,000 pounds on residential streets were just as blunt: "[] other than authorizing a blanket prohibition on the parking of such commercial vehicles in residential districts, the section is silent as to what other types of vehicles may be similarly excluded. Constrained as we are to construe the authorization strictly and not imply things not expressly stated by the Legislature [citations

---

[6]That section now reads, "Local authorities may, by ordinance or resolution, prohibit or restrict the stopping, parking, or standing of vehicles, including, but not limited to, vehicles which are six feet or more in height (including any load thereon) within 100 feet of any intersection, on certain streets or highways, or portions thereof, during all [or] certain hours of the day. . . ."

[7]That provision provides in part that "local authorities may, by ordinance or resolution, prohibit or restrict the parking or standing of vehicles on certain streets or highways, or portions thereof, between the hours of 2 a.m. and 6 a.m., and may, by ordinance or resolution, prohibit or restrict the parking or standing, on any street, or portion thereof, in a residential district, of commercial vehicles having a manufacturer's gross vehicle weight rating of 10,000 pounds or more. . . ."

to several decisions, including *Rumford* and *Lafayette*], we conclude that that silence is indicative of the Legislature's intention that local agencies not have authority to prohibit or otherwise restrict the parking of other types of vehicles on residential streets. Moreover, even without the rule dictating strict construction of Vehicle Code provisions, we would reach the same result. . . . [W]hen the Legislature has wanted to grant local authorities the power to enact an ordinance prohibiting the parking of a particular type of vehicle in residential ares, it has specifically done so. That it has not with respect to other types of vehicles would indicate that local agencies were not to have authority to similarly prohibit their parking." (73 Ops.Cal.Atty.Gen., *supra*, at p. 27.)

■ There is little to add. The Vehicle Code is replete with instances in which the Legislature has given local authorities the power to "prohibit" (Veh. Code, §§ 21101, subd. (c), 22502, subd. (c)), "prohibit or restrict" (e.g., Veh. Code, §§ 22506, 22507, 22510), "regulat[e] or prohibit[]" (Veh. Code, § 21100, subd. (a)), "license and regulate" (Veh. Code, § 21112), or simply "regulate" (Veh. Code, §§ 21107, 21108, 22455). Thus, we assume the Legislature knows whatever words it employs to delegate power to local authorities in the Vehicle Code will be accorded their plain meaning and the courts will not imply a broader grant of authority than that expressly given.

Effective January 1, 1986, cities lost the authority to ban vending from vehicles parked on streets. Insofar as it purports to ban street vending, subsection .015 of section 14.32.310 of the Anaheim Municipal Code conflicts with Vehicle Code section 22455.

## IV

The existence of an actual conflict between Anaheim Municipal Code section 14.32.310, subsection .015 and Vehicle Code section 22455 takes us to the next step in the preemption analysis; i.e., does the Anaheim ordinance impact a matter of municipal or statewide concern? ■ While it is a responsibility of the courts, not the Legislature, to determine "whether a matter is a municipal affair or of statewide concern, the courts will of course give great weight to the purpose of the Legislature in enacting general laws which disclose an intent to preempt the field to the exclusion of local regulation [citation], and it may well occur that in some cases the factors which influenced the Legislature to adopt the general laws may likewise lead the courts to the conclusion that the matter is of statewide rather than merely local concern." (*Bishop* v. *City of San Jose* (1969) 1 Cal.3d 56, 63 [81 Cal.Rptr. 465, 460 P.2d 137].) ■ The Legislature has demonstrated such an intent with regard to the Vehicle Code. And we agree it applies in the case of street vendors selling from motorized contraptions.

Vehicle Code section 21 declares, "Except as otherwise expressly provided, the provisions of this code are applicable and uniform throughout the State and in all counties and municipalities therein, and *no local authority shall enact or enforce any ordinance on the matters covered by this code unless expressly authorized herein.*" (Italics added.) The Supreme Court has consistently acknowledged, "The state's plenary power and its preemption of the entire field of traffic control are stated in Vehicle Code section 21 . . . . Thus, unless 'expressly provided' by the Legislature, a city has no authority over vehicular traffic control."[8] (*Rumford* v. *City of Berkeley, supra,* 31 Cal.3d at p. 550; see also *County of Los Angeles* v. *City of Alhambra, supra,* 27 Cal.3d 184, 189.)

Although recognizing "[c]ourts have held that the *regulation of vehicular traffic* upon the public streets is a matter of statewide concern and not a municipal affair," the city contends the ordinance does not purport to regulate or prohibit vehicular traffic on streets, "*but merely regulates commercial businesses.*" Because the regulation of commercial businesses is a matter of local concern, argues Anaheim, no state statute can preempt a charter city from adopting the ordinance currently under scrutiny. We are compelled to disagree. (*Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450 [20 Cal.Rptr. 321, 369 P.2d 937].)

Anaheim relies on *Loska* v. *Superior Court* (1986) 188 Cal.App.3d 569 [233 Cal.Rptr. 213]; *San Francisco Street Artists Guild* v. *Scott* (1974) 37 Cal.App.3d 667 [112 Cal.Rptr. 502]; and *In re Mares* (1946) 75 Cal.App.2d 798 [171 P.2d 762]. None of these decisions involved street vending from vehicles, however. All dealt with pedestrian entrepreneurs, e.g., a ticket scalper near Dodger Stadium, sidewalk artists hawking souvenirs, and a magazine salesman soliciting subscriptions from passersby.

*Amezcua* v. *City of Pomona, supra,* 170 Cal.App.3d 305, cited by the trial court, falls into the same inapposite category. As mentioned earlier, there the Court of Appeal determined a city could constitutionally ban the sale of food

---

[8]Supreme Court decisions on the subject have been around almost as long as the horseless carriage. In 1920, the court declared, "The streets of a city belong to the people of the state, and every citizen of the state has a right to the use thereof, subject to legislative control. [Citations.] . . . While it is true that the regulation of traffic upon a public street is of special interest to the people of a municipality, it does not follow that such regulation is a municipal affair, and if there is a doubt as to whether or not such regulation is a municipal affair, that doubt must be resolved in favor of the legislative authority of the state." (*Ex parte Daniels* (1920) 183 Cal. 636, 639 [192 P. 442, 21 A.L.R. 1172].)

For the purpose of this analysis, the Supreme Court has never recognized a distinction between the regulation of traffic and the regulation of parking. Neither is a municipal matter. (See, e.g., *County of Los Angeles* v. *City of Alhambra* (1980) 27 Cal.3d 184, 192-193 [165 Cal.Rptr. 440, 612 P.2d 24]; see also 73 Ops.Cal.Atty.Gen., *supra,* at p. 15.)

items from nonmotorized pushcarts. The court specifically rejected the claim made by plaintiffs in this case: The "argument that the state Vehicle Code preempts the [c]ity's authority to regulate pushcarts on public streets is without merit. This ordinance is concerned with the regulation of business on the city streets;[9] it is not addressing the regulation of vehicular traffic." (*Id.* at p. 311.) But this ordinance does just that; the footnote appended to the preceding sentence demonstrates why *Amezcua* is distinguishable: "In fact, the Vehicle Code is silent regarding the type of pushcart involved in this case." (*Id.* at p. 311, fn. 6.)

The Vehicle Code is *not* silent concerning the vehicles affected in *this* case. In general terms it authorizes street vending from vehicles in residential areas provided only that they are completely stopped, lawfully parked, and in compliance with any local ordinances that may be adopted "for the public safety." (Veh. Code, § 22455.) Accordingly, more on point than opinions involving pedestrians engaged in mainly sidewalk commerce are several venerable decisions from the California Supreme Court dealing with vehicular commerce.

*Morel* v. *Railroad Commission* (1938) 11 Cal.2d 488 [81 P.2d 144] involved a private carrier seeking to transport property for hire within the city limits of Los Angeles without securing a state permit. The city appeared as amicus curiae and argued, "the matter of regulating the use of the streets of a city for commercial purposes is a municipal matter and is not subject to the control of the [L]egislature." (*Id.* at p. 500.) The Supreme Court disagreed: "It is true [the several cases cited] involve regulation of the *use* of city streets and the instant case relates to the regulation of a *business* transacted upon such streets, and it is contended for this reason that these cases are not authority in support of the right of the state to regulate business carried on on the streets of a city. But the transacting of business upon a street necessarily requires the use of the street for that purpose, and the use of the street for the purpose of transacting business thereon is as a rule a much more onerous and burdensome use than the mere traveling over said streets by an ordinary private conveyance. If the latter use is a matter of public concern, we think the former which imposes far greater burdens upon the streets is also a matter of public concern and therefore subject to regulation imposed by the state [and *not* by the city]." (*Ibid.*, italics in original.)

The Supreme Court reiterated the theme several years later in *Bay Cities Transit Co.* v. *Los Angeles* (1940) 16 Cal.2d 772 [108 P.2d 435]. In *Bay*

---

[9]From the context we think it quite possible, even probable, that the court generally meant sidewalks, not "city streets" in the strict sense.

*Cities* a passenger bus line received a designated route from the state's railroad commission. The City of Los Angeles enacted an ordinance purporting to ban the bus from a portion of the state-approved route. After quoting from *Ex parte Daniels, supra,* 183 Cal. 636 (see fn. 8, *ante*), the *Bay Cities* court wrote, "The question whether or not the regulation of the use of city streets for commercial purposes is a matter for legislative or municipal control has been decided by the Supreme Court in *Morel . . . .*" (16 Cal.2d at p. 777.) Thus, whether vending from vehicles in residential areas is viewed as regulation of traffic or parking or as the use of city streets for commercial purposes, it is a matter of statewide concern.

The order denying a preliminary injunction is reversed. The superior court is directed to enjoin enforcement of subsection .015 of Anaheim Municipal Code section 14.32.310, insofar as the sale of goods from otherwise lawfully parked vehicles on public streets is concerned, and to enter judgment in plaintiffs' favor in the declaratory relief action in accordance with the views expressed above. (Code Civ. Proc., § 43.) Our injunction is vacated effective upon the return of the remittitur. Plaintiffs are awarded costs.[10]

Sills, P. J., and Wallin, J., concurred.

---

[10]Because we resolve this matter based on the preemption doctrine, it is not necessary to address plaintiffs' constitutional claims.