[No. A085460. First Dist., Div. Three. July 24, 2000.]

SAM C. HORTON et al., Plaintiffs and Appellants, v.
CITY OF OAKLAND et al., Defendants and Respondents.

COUNSEL

American Civil Liberties Union Foundation of Northern California, Alan L. Schlosser, John M. Crew; and Michael B. Anderson for Plaintiffs and Appellants.

Larson & Weinberg and Nina Wilder for California Attorneys for Criminal Justice as Amicus Curiae on behalf of Plaintiffs and Appellants.

Jayne Williams, City Attorney, Joyce M. Hicks, Assistant City Attorney, Marcia L. Meyers, Deputy City Attorney; Thomas J. Orloff, District Attorney, Russell J. Giuntini and Armando G. Cuellar, Jr., Deputy District Attorneys, for Defendants and Respondents.

OPINION

**CORRIGAN, J.**—Appellants Sam C. Horton and Cheri Bryant, Oakland residents and taxpayers, brought this action to challenge a city ordinance authorizing civil forfeiture of vehicles involved in solicitation of prostitution or acquisition of controlled substances. Appellants argued unsuccessfully below that state law preempts the ordinance. We affirm the trial court's judgment in favor of defendants.

*Factual and Procedural Background*

The ordinance was enacted in 1997 after citizens complained about the nuisance created by persons driving through neighborhoods to buy drugs or solicit acts of prostitution. The ordinance authorizes the seizure, forfeiture, and sale of vehicles used to solicit prostitution or acquire drugs.[1] (Oakland Mun. Code, former ch. 3, art. 23, §§ 3-23.01-09, now tit. 9, § 9.56.010.)

Appellants filed a petition for writ of mandate and complaint for declaratory and injunctive relief enjoining respondents from enforcing the ordinance or expending public funds to do so. The superior court denied the writ, ruling that no express or implied preemption had been shown, and that the subject matter of the ordinance was a municipal affair.

The parties stipulated that the court's decision was dispositive of plaintiffs' remaining claims, and final judgment was entered for respondents. This timely appeal followed.[2]

*Issues on Appeal*

■ The question here presented is whether the Oakland vehicle forfeiture ordinance is preempted by state law. Appellants concede no constitutional issues are raised by this appeal. ■ The preemption issue raises questions of law subject to de novo review. (*Bravo Vending v. City of Rancho Mirage* (1993) 16 Cal.App.4th 383, 391-392 [20 Cal.Rptr.2d 164].) ■ The ordinance is presumed valid; appellants have the burden of proving otherwise. (*California Rifle & Pistol Assn. v. City of West Hollywood* (1998) 66 Cal.App.4th 1302, 1331 [78 Cal.Rptr.2d 591].)

■ Appellants assert that the Oakland ordinance is invalid because it conflicts with state law. Article XI, section 7, of the California Constitution provides that a city "may make and enforce within its limits all local, police, sanitary, and other ordinances and regulations not in conflict with general laws." Because Oakland is a charter city, an additional constitutional provision can come into play. ■ Article XI, section 5, the "home rule"

---

[1]The ordinance also covers attempts to commit those acts. It was amended in 1998 to include a right to jury trial. (Oakland Ord. No. 12093 C.M.S.)

[2]We have granted the California Attorneys for Criminal Justice and the Forfeiture Endangers American Rights Foundation permission to file an amicus curiae brief in support of appellants. We have also granted appellants' unopposed request for judicial notice of documents designated exhibits A through Z, without determining relevancy or materiality. We have also granted, in part, appellants' unopposed supplemental request for judicial notice of additional legislative history materials, without a determination of relevancy, and now extend judicial notice to the remaining exhibits designated by that supplemental request.

doctrine, reserves to charter cities the right to adopt and enforce ordinances that conflict with general state laws, provided the subject of the regulation is a "municipal affair" rather than one of "statewide concern." (*Johnson v. Bradley* (1992) 4 Cal.4th 389, 399 [14 Cal.Rptr.2d 470, 841 P.2d 990].)

■ Case law has clarified how courts should analyze whether an ordinance enacted by a charter city is valid. "First, a court must determine whether there is a genuine conflict between a state statute and a municipal ordinance. [Citations.] Only after concluding there is an actual conflict should a court proceed with the second question; i.e., does the local legislation impact a municipal or statewide concern?" (*Barajas v. City of Anaheim* (1993) 15 Cal.App.4th 1808, 1813 [19 Cal.Rptr.2d 764].) Courts should avoid making unnecessary choices between competing claims of municipal and state governments "by carefully insuring that the purported conflict is in fact a genuine one, unresolvable short of choosing between one enactment and the other." (*California Fed. Savings & Loan Assn. v. City of Los Angeles* (1991) 54 Cal.3d 1, 16-17 [283 Cal.Rptr. 569, 812 P.2d 916].) In other words, the preemption question begins with an inquiry into the existence of a conflict. If there is no conflict, the home rule doctrine is not brought into play.

■ " 'A conflict exists if the local legislation " 'duplicates, contradicts, or enters an area fully occupied by general law, either expressly or by legislative implication.' " ' [Citations.]" (*Sherwin-Williams Co. v. City of Los Angeles* (1993) 4 Cal.4th 893, 897 [16 Cal.Rptr.2d 215, 844 P.2d 534] (*Sherwin-Williams*).) "[L]ocal legislation enters an area that is 'fully occupied' by general law when the Legislature has expressly manifested its intent to 'fully occupy' the area [citation], or when it has impliedly done so in light of one of the following indicia of intent: '(1) the subject matter has been so fully and completely covered by general law as to clearly indicate that it has become exclusively a matter of state concern; (2) the subject matter has been partially covered by general law couched in such terms as to indicate clearly that a paramount state concern will not tolerate further or additional local action; or (3) the subject matter has been partially covered by general law, and the subject is of such a nature that the adverse effect of a local ordinance on the transient citizens of the state outweighs the possible benefit to the' locality [citations]." (*Id.* at p. 898, quoting *In re Hubbard* (1964) 62 Cal.2d 119, 128 [41 Cal.Rptr. 393, 396 P.2d 809], disapproved on another point in *Bishop v. City of San Jose* (1969) 1 Cal.3d 56, 63, fn. 6 [81 Cal.Rptr. 465, 460 P.2d 137].)

Appellants assert the Oakland ordinance conflicts with two state laws: We discuss each claim separately.

## A. *Alleged conflict with Health and Safety Code section 11469 et seq.*

Appellants contend the Oakland ordinance conflicts with Health and Safety Code section 11469 et seq., which govern certain drug-related asset forfeitures.[3] They argue that the Legislature has created a comprehensive statutory scheme dealing with drug-related asset forfeiture, balancing the needs of law enforcement and the protection of property and due process rights, with a clear intent to establish uniform standards and procedures statewide.[4]

Section 11470, subdivision (e), provides that vehicles are subject to forfeiture if they have been "used as an instrument to facilitate the manufacture of, or possession for sale or sale of [specified amounts of drugs] . . . ."[5] Appellant contends the state law reflects a legislative intent that drug asset forfeiture procedures be uniform throughout the state, and that the Oakland ordinance is therefore impliedly preempted under the *Hubbard* test. Implied preemption may properly be found, however, "only when the circumstances 'clearly indicate' a legislative intent to preempt." (*California Rifle & Pistol Assn. v. City of West Hollywood, supra*, 66 Cal.App.4th at p. 1317, citing *Sherwin-Williams, supra*, 4 Cal.4th at p. 898.) Such a clear indication is absent here.

The state statutory scheme is silent with regard to vehicles used by drug *buyers*.[6] Oakland has included such vehicles in its nuisance abatement program in response to the concerns of its residents. Thus, the Oakland ordinance covers an area untouched by statewide legislation.[7] As a result, it cannot be said that the state law "clearly indicates" that the nuisance caused by drug *buyers* has become "exclusively" a matter of state concern, nor that the state law indicates "a paramount state concern" about that nuisance that

---

[3]All further references in part A to sections 11469 and 11470 are to the Health and Safety Code.

[4]We note, however, that the standards and procedures for vehicle forfeiture established by the various provisions of state law are not uniform. Pursuant to Vehicle Code section 14607.6, subdivision (e)(5), for example, the forfeiture of a vehicle driven by a previously convicted unlicensed driver does not require a conviction for the current offense or proof beyond a reasonable doubt. (Contrast with Health & Saf. Code, § 11488.4, subd. (i)(1), (3) [governing forfeiture of vehicles used to facilitate drug manufacture or sale].)

[5]The statutory scheme also describes other property subject to forfeiture (§ 11470), specifying when it may be seized (Health & Saf. Code, § 11471), procedures to be followed in carrying out the forfeiture (Health & Saf. Code, §§ 11488.4, 11488.5), and how the proceeds of sale are to be distributed (Health & Saf. Code, § 11489).

[6]Nor have appellants cited any legislative history to indicate the specific behavior targeted by the Oakland ordinance was ever considered in enacting the state law at issue here.

[7]Contrast *Suter v. City of Lafayette* (1997) 57 Cal.App.4th 1109, 1124-1126 [67 Cal.Rptr.2d 420], cited by appellants. There a local ordinance imposed more strict dealer firearm storage safety requirements than the detailed methods very specifically authorized by statute. The *Suter* court concluded the local ordinance had been preempted.

"will not tolerate further or additional local action." (*Sherwin-Williams, supra*, 4 Cal.4th at p. 898, citing *In re Hubbard, supra*, 62 Cal.2d at p. 128.) "The general fact that state legislation concentrates on specific areas, and leaves related areas untouched" has been held to demonstrate "a legislative intent to permit local governments to continue to apply their police power according to the particular needs of their communities in areas not specifically preempted. [Citation.]" (*California Rifle & Pistol Assn. v. City of West Hollywood, supra*, 66 Cal.App.4th at p. 1318 [holding state law did not preempt city ordinance banning sales of specified handguns].)

Nor does the adverse effect of the ordinance on transient citizens of the state outweigh the benefit to the municipality. (*Sherwin-Williams, supra*, 4 Cal.4th at p. 898.) When state legislation does not address the demands of particular urban areas, "it becomes proper and even necessary for municipalities to add to state regulations provisions adapted to their special requirements." (*In re Hoffman* (1909) 155 Cal. 114, 118 [99 P. 517]; see also *Eckl v. Davis* (1975) 51 Cal.App.3d 831, 838 [124 Cal.Rptr. 685]; *People v. Jenkins* (1962) 207 Cal.App.2d Supp. 904, 907 [24 Cal.Rptr. 410].) The Oakland ordinance is directed at the protection of public safety, and targets the purchase or attempted purchase of illicit drugs by transient and resident alike. (See *Yuen v. Municipal Court* (1975) 52 Cal.App.3d 351, 357 [125 Cal.Rptr. 87].) The procedural requirements of Health and Safety Code sections 11488.4 and 11488.5[8] are therefore inapplicable to vehicles seized pursuant to the Oakland ordinance.[9] If the Legislature wishes to preempt local forfeiture ordinances of this kind, it may express that intention by enacting appropriate legislation.

---

[8]When forfeiture of a vehicle is sought under section 11469 et seq., the government must prove beyond a reasonable doubt that the vehicle was used or intended to be used to facilitate a violation of one of the specified drug offenses. (Health & Saf. Code, § 11488.4, subd. (i)(1).) A defendant must also be convicted in the underlying criminal action. (Health & Saf. Code, § 11488.4, subd. (i)(3).) It must also be shown that the owner "had actual knowledge that the seized property would be or was used for a purpose for which forfeiture is permitted and consented to that use . . . ." (Health & Saf. Code, § 11488.5, subd. (e).) An exemption is provided when "there is a community property interest in the vehicle by a person other than the defendant and the vehicle is the sole . . . vehicle available to the defendant's immediate family." (§ 11470, subd. (e).) A claim may be filed within 30 days after actual notice. (Health & Saf. Code, § 11488.5, subd. (a)(1).) The maximum value of property subject to nonjudicial administrative forfeiture is set at $25,000. (Health & Saf. Code, § 11488.4, subd. (j).) Seizing agencies must also have a manual and implement training on forfeiture procedures (§ 11469, subds. (d), (e)) , and "shall avoid any appearance of impropriety in the sale or acquisition of forfeited property." (§ 11469, subd. (f).)

[9]For example, the Oakland ordinance adopts a preponderance of the evidence standard (Oakland Ord. No. 12093 C.M.S., Oakland Mun. Code, tit. 9, § 9.56.070 F), does not require a conviction of the underlying offense, and does not include an innocent owner defense or a community property exemption for the sole vehicle of the immediate family. The proceeds from the program are divided evenly between local law enforcement and prosecutors. (*Id.*, § 9.56.090 C.)

Appellants would have us retroactively infer such preemptive intent from recent legislative activity. In September 1999, the Legislature passed Assembly Bill No. 662 (1999-2000 Reg. Sess.), amending section 11469 et seq. to include forfeitures under the criminal profiteering statute. The bill also declared the Legislature's intent that forfeiture law be exclusive of any local ordinance or regulation, declaring the subject a matter of statewide concern.

Assembly Bill No. 662 was vetoed by the Governor, however, with the specific explanation that "[i]t is not appropriate for the State to take away the tools from Oakland, Sacramento, and other cities considering the adoption of similar ordinances without a more careful analysis of the amount of discretion which should be left to cities to craft their own remedies in response to local conditions." Thus the bill's statement that "[t]he provisions of this section are a clarification and declaration of existing law" is far from definitive. A "clear indication" is one which needs no further elucidation. The Legislature's perceived need to "clarify" demonstrates that the statute as drafted fails to provide the clear indication required to preempt by implication. Appellants have failed to show that the Oakland ordinance conflicts with section 11469 et seq.[10]

### B. *Alleged conflict with Vehicle Code section 22659.5*

Vehicle Code section 22659.5, subdivision (a), authorizes any city to "adopt an ordinance establishing a five-year pilot program that implements procedures for declaring any motor vehicle a public nuisance when the vehicle is used [to pimp, pander or solicit prostitution]."[11] The defendant must also be convicted of the specified prostitution-related offenses, or plead to a lesser included offense. (§ 22659.5, subd. (a).) Under subdivision (b), the local ordinance may authorize impoundment of the vehicle for up to 48 hours if the defendant violates the court's order not to use the vehicle again for the defined unlawful purposes. Under the pilot programs authorized by

---

[10]Appellants also suggest a scenario in which a person uses a vehicle to purchase a large quantity of drugs in Oakland. They contend that person might then be chargeable with possession for sale under state law, and therefore subject to conflicting forfeiture procedures under the Oakland ordinance and section 11469 et seq. Because appellants' hypothetical presupposes the violation of two separate enactments directed at different behaviors, there is no inherent conflict in the person being subject to two different possible penalties. Nor does the record indicate that such a scenario has ever existed in fact. Whether both penalties could be imposed or whether one should take precedence over the other are questions to be answered if such a case arises.

[11]All further references in part B to section 22659.5 are to the Vehicle Code. As originally enacted, section 22659.5 applied only to certain designated local entities (including Oakland), and was intended to sunset on January 1, 1999. (Stats. 1993, ch. 485, § 1, p. 2596.) After the addition of various cities and counties, the statute was amended in 1998 to remove its temporal and geographical restrictions. (Stats. 1998, ch. 758, § 3.)

this statute, no other action may be taken to enjoin and abate the declared nuisance.[12] (§ 22659.5, subd. (c).)

Appellants contend section 22659.5 provides the exclusive authorization for local ordinances designed to abate as a nuisance vehicles used to solicit prostitution. They assert the Oakland ordinance conflicts with the statute because it deals with the same subject and authorizes forfeiture instead of impoundment, without requiring a conviction or plea by the defendant. Again, as with the Health and Safety provisions discussed above, this statute contains no explicit statement of intent to occupy the area. Thus the question becomes whether the passage of legislation authorizing local communities to enact a pilot program constitutes a clear indication of intent to occupy the area sufficient to support a finding of implied preemption. We conclude it does not. (See *In re Michael G.* (1988) 44 Cal.3d 283, 294 [243 Cal.Rptr. 224, 747 P.2d 1152] [declining to infer general legislative intent regarding secure confinement of status offenders from establishment of particular pilot program].)

We note first that the Legislature has not taken definitive action to pass encompassing legislation that would be binding statewide. In fact, the Oakland ordinance was in effect and this lawsuit was pending when section 22659.5 was amended in 1998 to remove its geographical restrictions. The Legislature did not take the opportunity to amend the law to prohibit local nuisance abatement through vehicle forfeiture. (See *Xiloj-Itzep v. City of Agoura Hills* (1994) 24 Cal.App.4th 620, 643 [29 Cal.Rptr.2d 879].) Thus in enacting section 22659.5, the Legislature has left it to local communities to establish a pilot program pursuant to that statute if they so choose.[13] Section 22659.5 also provides certain specifications for any pilot program adopted pursuant to that statute. However, it does not preclude local governments from enacting other provisions if they decide not to adopt the profferred pilot program.

Because the Oakland ordinance was not enacted pursuant to section 22659.5, it is not constrained by the procedural requirements of that statute.[14] We also note that the history of section 22659.5 indicates legislative concern with traffic and parking problems resulting from drivers distracted

---

[12]The Assembly and Senate bill analyses specifically noted that the bill "does not authorize forfeiture of the vehicle."

[13]A 1993 memo from the Oakland City Attorney's Office to the city council had concluded that an ordinance adopted under the pilot program authorized by section 22659.5 would be difficult to enforce for a number of reasons, and had recommended efforts to change the legislation.

[14]We note that the Oakland ordinance was enacted neither as a pilot program nor for a period of limited duration.

by the search for prostitutes, whereas the Oakland ordinance is specifically directed more broadly at nuisance and blight abatement, traditionally an area of local regulation.[15] (See *City of Bakersfield v. Miller* (1966) 64 Cal.2d 93, 96, 100 [48 Cal.Rptr. 889, 410 P.2d 393]; *City of Oakland v. Superior Court* (1996) 45 Cal.App.4th 740, 756 [53 Cal.Rptr.2d 120]; *Suzuki v. City of Los Angeles* (1996) 44 Cal.App.4th 263, 278 [51 Cal.Rptr.2d 880]; Gov. Code, § 38771.)

With regard to the third prong of the *Hubbard* test, appellants assert the ordinance has a direct impact on anyone driving within city limits, including "transient citizens," who could be adversely affected by forfeiture of their vehicle. Appellants rely on *State v. Gonzales* (Minn.Ct.App. 1992) 483 N.W.2d 736. There, the Minnesota Court of Appeals applied the three-pronged *Hubbard* test and ruled that a local ordinance authorizing the forfeiture of vehicles driven by the customers of prostitutes was preempted by Minnesota state law. The court noted that forfeiture of vehicles for offenses varying by jurisdiction could impose uncertainty and confusion, and concluded that in view of Minnesota's general state law regarding the forfeiture of property involved in criminal offenses, the adverse effect of a local ordinance upon transient citizens outweighed the benefit to the local jurisdiction. (*Id.* at p. 738.)

The *Gonzales* case is distinguishable. There, the court emphasized that the Minnesota legislature had thoroughly considered the subject of forfeiture, covering all forms of property and a wide variety of criminal offenses. (*State v. Gonzales, supra*, 483 N.W.2d at p. 738.) The court concluded that the Minnesota statute was "so comprehensive as to indicate a legislative intention to preempt the field." (*Ibid.*) Minnesota's comprehensive forfeiture law, however, is a far cry from the optional pilot programs contemplated by section 22659.5. Further, the Oakland ordinance will adversely affect only those who use their cars to solicit prostitution or buy drugs in Oakland, matters of serious concern to the city. Thus the Oakland ordinance does not conflict with section 22659.5 because it does not duplicate, contradict, or enter into an area fully occupied by that statute.

Appellants also rely on Vehicle Code section 21, which provides: "Except as otherwise expressly provided, the provisions of [the Vehicle Code] are

---

[15]The bill analysis for the Assembly Committee on Public Safety's May 1993 hearing explained the need for the pilot program as follows: "[Prospective customers' cruising the area where prostitutes congregate] causes traffic problems, limits parking availability for merchants and residents of these neighborhoods, and creates dangerous situations due to drivers not watching where they are driving." We recognize that other sources of legislative history also refer to broader goals of reducing prostitution in neighborhoods for the protection of public health and safety. (See Sen. Com. on Judiciary, Analysis of Assem. Bill No. 1332 (1993-1994 Reg. Sess.) [regarding geographical expansion of the statute in 1994]; Stats. 1993, ch. 485, § 1, pp. 2595-2596.)

applicable and uniform throughout the State and in all counties and municipalities therein, and no local authority shall enact or enforce any ordinance on the matters covered by this code unless expressly authorized herein." Appellants assert the Oakland ordinance is preempted because it fails to follow the procedures set out in section 22659.5. As explained above, however, section 22659.5's authorization of an optional and limited pilot program is not to be construed to cover the matter addressed by Oakland's independent ordinance. (See also *Xiloj-Itzep v. City of Agoura Hills, supra,* 24 Cal.App.4th at pp. 644-645 [ordinance prohibiting solicitation of commerce on city streets does not regulate vehicular traffic in violation of Veh. Code, § 21].)

Appellants have failed to demonstrate that the Oakland ordinance conflicts with state law. We therefore do not reach the question of whether the subject of the ordinance is a municipal affair or a matter of statewide concern. (See *Barajas v. City of Anaheim, supra,* 15 Cal.App.4th at p. 1813.) Appellants' arguments touching upon policy concerns regarding the alleged defects in the ordinance are not directly relevant to the technical preemption issues before us on this appeal.

### Disposition

The judgment is affirmed.

McGuiness, P. J., and Walker, J., concurred.

A petition for a rehearing was denied August 18, 2000, and the petition of appellant Sam C. Horton for review by the Supreme Court was denied October 18, 2000. Mosk, J., and Kennard, J., were of the opinion that the petition should be granted.