[No. H023150. Sixth Dist. Apr. 2, 2002.]

ROBLE VISTA ASSOCIATES, Plaintiff and Respondent, v.
JOHN BACON, Defendant and Appellant.

**COUNSEL**

Douglas J. Abbott for Defendant and Appellant.

Richards, Watson & Gershon, Rochelle Browne; and Ariel Pierre Calonne, City Attorney, for City of Palo Alto as Amicus Curiae on behalf of Defendant and Appellant.

Todd B. Rothbard for Plaintiff and Respondent.

**OPINION**

**MIHARA, J.**—The City of Palo Alto enacted the Rental Housing Stabilization Ordinance (Ordinance),[1] which provides that a landlord is required to offer a one-year lease to a prospective tenant. The sole issue on appeal is whether state law preempts the Ordinance. We conclude that it does not and reverse the judgment.

### Statement of Facts

When the city council adopted the Ordinance in 1980, it made the following findings: "It is found and declared that there is a growing shortage of, but increasing demand for, housing in the City of Palo Alto. Such shortage and increased demand, coupled with increasing inflation, have placed substantial pressure on those residents of Palo Alto seeking rental housing. This Council finds that tenants are entitled to a contractual relationship with a landlord that offers some assurance of stability under the terms

---

[1]The Ordinance is codified at Palo Alto Municipal Code section 9.68.010 et seq.

of a written lease so as to minimize displacement of tenants into a rental housing market which affords them few and expensive options." (Palo Alto Mun. Code, § 9.68.010.)[2]

The Ordinance requires that a landlord offer new and renewing tenants a "written lease which has a minimum term of one year." (§ 9.68.030, subd. (a).) It also requires that the lease "set the rent for the rental unit at a rate or rates certain and these rates shall not be otherwise modified during the term of such lease." (§ 9.68.030, subd. (d).) The Ordinance further provides that if a tenant initially rejects a one-year lease, the landlord must annually offer a one-year lease to this tenant. (§ 9.68.030, subd. (e)(3).) The "[f]ailure of a landlord to comply with any of the provisions of this chapter shall provide the tenant with a defense in any legal action brought by the landlord to recover possession of the rental unit" or "to collect rent." (§ 9.68.040, subds. (a), (b).)

On October 16, 1994, John Bacon leased an apartment from Roble Vista Associates in the City of Palo Alto. The initial term of the lease was six months. Roble Vista did not offer a one-year lease to Bacon at that time or at any time thereafter.

On January 24, 2000, Roble Vista served Bacon with a 30-day notice to vacate the apartment by February 23, 2000. On February 4, 2000, Bacon delivered to Roble Vista the rent payment for the entire month of February. Roble Vista returned the check one week later.

On February 9, 2000, Roble Vista served Bacon with a three-day notice to pay rent or quit for rent prorated through February 23, 2000. Within the three-day period, Bacon offered to pay Roble Vista the full amount of rent for February, which Roble Vista declined to accept.

On February 18, 2000, Roble Vista commenced an unlawful detainer action against Bacon for his failure to pay pro rata for the month of February. In his answer, Bacon alleged that Roble Vista evicted him in retaliation for his complaints about an elevator and that Roble Vista's demand for possession violated the Ordinance.

Following trial, the court found that Bacon did not prevail on his retaliatory eviction defense due to his failure to pay the amount demanded in the three-day notice. The trial court also found that state law preempted the Ordinance, and entered judgment in favor of Roble Vista for possession of

---

[2]All further statutory references are to the Palo Alto Municipal Code unless otherwise stated.

the premises, rent and damages of $2,145, attorney's fees of $300, and costs of $126.

Bacon appealed. The appellate division of the superior court held that the Ordinance was invalid and certified its opinion for publication. This court ordered on its own motion that the matter be transferred to this court for hearing and decision. (Cal. Rules of Court, rule 62(a).)

### Discussion

Bacon[3] contends that state law does not preempt the Ordinance and thus is entitled to its substantive defenses.[4]

### I. *Standard of Review*

█ Whether state law preempts a local ordinance is a question of law that is subject to de novo review. (*Horton v. City of Oakland* (2000) 82 Cal.App.4th 580, 584 [98 Cal.Rptr.2d 371].)

### II. *Preemption*

█ "A county or city may make and enforce within its limits all local, police, sanitary, and other ordinances and regulations not in conflict with general laws." (Cal. Const., art. XI, § 7.) Charter cities, such as the City of Palo Alto, may enact legislation regarding "municipal affairs." (Cal. Const., art. XI, § 5.) However, " '[i]f otherwise valid local legislation conflicts with state law, it is preempted by such law and is void.' " (*Sherwin-Williams Co. v. City of Los Angeles* (1993) 4 Cal.4th 893, 897 [16 Cal.Rptr.2d 215, 844 P.2d 534], quoting *Candid Enterprises, Inc. v. Grossmont Union High School Dist.* (1985) 39 Cal.3d 878, 885 [218 Cal.Rptr. 303, 705 P.2d 876].) " 'A conflict exists if the local legislation " 'duplicates, contradicts, or enters an area fully occupied by general law, either expressly or by legislative implication.' " ' . . ." (*Sherwin-Williams Co.*, at p. 897, citations omitted.)

█ In the present case, the appellate division found that state law preempted the Ordinance. It relied on this court's opinion in *Tri County Apartment Assn. v. City of Mountain View* (1987) 196 Cal.App.3d 1283 [242 Cal.Rptr. 438]. In *Tri County*, the City of Mountain View enacted an

---

[3]Bacon is joined by the City of Palo Alto as amicus curiae.

[4]Roble Vista contends that this court need not reach the issue of the validity of the Ordinance, because Bacon failed to pay the amount of rent demanded in the three-day notice. Bacon lost his right to contest the unlawful detainer on the ground of retaliatory eviction. However, if state law does not preempt the Ordinance, he did not lose his right to raise the defense provided in the Ordinance.

ordinance requiring a landlord to give 60 days' notice of any rent increase. At that time Civil Code section 827 required that a landlord give 30 days' notice of any rent increase. This court stated that the issue was "whether a municipal ordinance restricting the effective date of proposed rental increases is a valid rent control measure or a prohibited trespass into landlord-tenant areas preempted by state law." (*Tri County*, at p. 1286.) The City of Mountain View argued that the ordinance should be classified as a permissible control of rent increases. However, this court concluded that the ordinance addressed notification, not rent control, because it dealt "directly and unequivocally with the subject of *when* a landlord must notify a tenant about a rent increase." (*Id.* at p. 1293.) This court then considered "whether the Legislature [had] preempted the field of notification in landlord-tenant relationships." (*Ibid.*)

In *Tri County*, we stated that "[l]andlord-tenant relationships are so much affected by statutory timetables governing the parties' respective rights and obligations that a 'patterned approach' by the Legislature appears clear." (*Tri County Apartment Assn. v. City of Mountain View, supra,* 196 Cal.App.3d at p. 1296.) This court then noted that the ordinance adopted the same purpose as the statute, i.e., appropriate notification, but changed the statewide chronology. (*Ibid.*) This court also found that "the extensive scheduling provided by the Legislature reveals that the timing of landlord-tenant transactions is a matter of statewide concern not amenable to local variations," and that the ordinance "directly conflicts with the legislative scheme." (*Id.* at p. 1298.) Accordingly, we held that state law preempted the ordinance. (*Ibid.*)

Here the appellate division found that the Ordinance " 'duplicate[s], contradict[s], or enter[s]' the field of notification or timing of landlord-tenant relationships as provided for by the Legislature." The appellate division stated that "[t]he effective result of the ordinance is to require a one-year notice to quit rather than the thirty days provided by state statute. (Civ. Code, §§ 827, 789, 790, 1946.) Palo Alto should not be able to alter through subterfuge the thirty-day notice provision of state law by prohibiting any changes in the tenancy's terms except at the beginning of each year."

We disagree with the appellate division's characterization of the Ordinance as requiring a one-year notice to quit. In our view, the Ordinance requires that a landlord offer a one-year lease, thus addressing the duration of the lease. The Ordinance does not specify the amount of notice that must

be given to terminate a tenancy.[5] Accordingly, the present case is readily distinguishable from *Tri County*.[6]

The issue before us is whether state law has preempted local regulation regarding the length of a lease. ■ We first note that the Legislature has not preempted all local regulation of landlord/tenant relationships despite numerous statutes regulating these relationships. (*Birkenfeld v. City of Berkeley* (1976) 17 Cal.3d 129, 142 [130 Cal.Rptr. 465, 550 P.2d 1001]; *Fisher v. City of Berkeley* (1984) 37 Cal.3d 644, 709 [209 Cal.Rptr. 682, 693 P.2d 261].) "Whether the relevant field be deemed to be rent control as such or a broader aspect of landlord-tenant relations [citation], there is no legislative indication of a 'paramount state concern [which] will not tolerate further or additional local action.' " (*Birkenfeld, supra*, 17 Cal.3d at p. 142, quoting *In re Hubbard* (1964) 62 Cal.2d 119, 128 [41 Cal.Rptr. 393, 396 P.2d 809].)

■ Roble Vista has not cited, nor have we found, a state statute governing when or if leases must be offered. Similarly there is no state statute governing what the terms of any such lease must be. Thus, the Ordinance does not duplicate or contradict any statute.

We next consider whether the Ordinance enters a field fully occupied by state law. (*Sherwin-Williams Co. v. City of Los Angeles, supra*, 4 Cal.4th at p. 898.) ■ "[L]ocal legislation enters an area that is 'fully occupied' by general law when the Legislature has expressly manifested its intent to 'fully occupy' the area [citation], or when it has impliedly done so in light of one of the following indicia of intent: '(1) the subject matter has been so fully and completely covered by general law as to clearly indicate that it has become exclusively a matter of state concern; (2) the subject matter has been partially covered by general law couched in such terms as to indicate clearly that a paramount state concern will not tolerate further or additional local action; or (3) the subject matter has been partially covered by general law, and the subject is of such a nature that the adverse effect of a local ordinance on the transient citizens of the state outweighs the possible benefit to the' locality." (*Ibid.*)

■ Here the Legislature has not expressly manifested its intent to fully occupy the area. Thus, we consider whether the present case involves an

---

[5]We also note that when the Ordinance was first adopted, it contained a provision requiring a 60-day notice of rent increases (former § 9.68.030, subd. (d)). This provision was repealed following this court's decision in *Tri County Apartment Assn. v. City of Mountain View, supra*, 196 Cal.App.3d 1283.

[6]The appellate division's reliance on Civil Code sections 827, 789, 790, and 1946 is also misplaced. These statutes expressly apply only to tenancies at will, month-to-month tenancies, and leases that do not provide any durational term.

implied intent by the Legislature to do so. Applying the alternative tests, we conclude that there is no full and complete state coverage of the field of the duration of leases so as to "clearly indicate" that the field "has become exclusively a matter of state concern." Roble Vista's citation to notice statutes does not suggest a legislative intent to occupy the field of the duration of leases. By their terms, as previously noted, the statutes do not apply to one-year leases. Moreover, the notice statutes do not suggest that the field of duration of leases is clearly a subject of paramount state interest that cannot tolerate any local involvement. Finally, the Ordinance would not have any effect on transient citizens, much less an effect that outweighs the local benefit to be derived from the stability it will offer to tenants. Accordingly, we conclude that state law has not preempted the Ordinance.

Roble Vista, however, contends that the provision of the Ordinance that allows tenants to assert the landlord's failure to offer a one-year lease is preempted by the state statutory scheme for recovery of possession and rent.

We disagree. In *Birkenfeld,* the California Supreme Court rejected the claim that state statutes governing recovery of possession preempted substantive defenses to eviction in local regulations. *"The purpose of the unlawful detainer statutes is procedural.* The statutes implement the landlord's property rights by permitting him to recover possession once the consensual basis for the tenant's occupancy is at an end. *In contrast, the charter amendment's elimination of particular grounds for eviction is a limitation upon the landlord's property rights under the police power, giving rise to a substantive ground of defense in unlawful detainer proceedings. The mere fact that a city's exercise of the police power creates such a defense does not bring it into conflict with the state's statutory scheme. . . .* Similarly, the statutory remedies for recovery of possession and of unpaid rent (see Code Civ. Proc., §§ 1159-1179a; Civ. Code, § 1951 et seq.) do not preclude a defense based on municipal rent control legislation enacted pursuant to the police power imposing rent ceilings and limiting the grounds for eviction for the purpose of enforcing those rent ceilings. . . ." (*Birkenfeld v. City of Berkeley, supra,* 17 Cal.3d at p. 149, italics added, citations omitted.)

Similarly here the Ordinance provides a substantive defense to eviction. The Ordinance states that the landlord's failure to comply with its provisions provides the tenant with "a defense in any legal action" to recover possession or collect rent. (§ 9.68.040, subds. (a), (b).) Nothing in the Ordinance interferes with the procedure for bringing an eviction action under Code of Civil Procedure sections 1159 through 1179a.

Roble Vista next contends that the Ordinance is not rationally related to its stated purpose of providing stability to tenants in the rental housing market.

It claims that a landlord would be required to commence eviction proceedings immediately upon expiration of the lease. We disagree. Nothing in the Ordinance prevents a landlord and tenant from renegotiating another lease. Roble Vista next claims that since a landlord can raise the rent at any time upon 30 days' written notice in a month-to-month tenancy, there is no urgency to increase the rent. Under the Ordinance, however, Roble Vista claims that a landlord would be "compelled to give the largest increase that the market will bear." There is nothing in the record to support Roble Vista's claim that rent increases are greater for tenants in one-year leases in contrast to those in month-to-month tenancies.

Roble Vista also contends that the Ordinance is "illogical" in prohibiting any eviction where a landlord has not complied with the Ordinance. It claims that since a landlord is required to offer a one-year lease at the inception of the tenancy and annually thereafter, a landlord cannot cure a breach of this provision by offering a lease at any other time. The Ordinance states: "If a tenant or prospective tenant wishes to rent a rental unit from a landlord and if said landlord wishes to rent said rental unit to said tenant or prospective tenant, the landlord must offer to the tenant or prospective tenant a written lease which has a minimum term of one year." (§ 9.68.030, subd. (a).) Though the Ordinance anticipates that the offer of a one-year lease will be made at the inception of the lease and annually thereafter, there is nothing in its language restricting the landlord's offer to these occasions. Thus, if a landlord were in breach of this provision, he or she could cure the breach at any time by offering a one-year lease to the tenant.

### Disposition

The judgment is reversed. Roble Vista Associates is to pay costs on appeal.

Premo, Acting P. J., and Elia, J., concurred.