Filed 12/1/15

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| MARGARET D. FOSTER,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>JOHN F. BRITTON et al.,<br><br>Defendants, Cross-complainants,<br>and Appellants;<br><br>SAN FRANCISCO RENT<br>STABILIZATION & ARBITRATION<br>BOARD,<br><br>Intervener, Cross-defendant, and<br>Respondent | A139892<br><br>(City and County of San Francisco<br>Super. Ct. No. CGC11514035) |

State law provides that a landlord may change the terms of a month-to-month lease after giving 30 days' notice and that the new terms become part of the lease if the tenant continues to hold the premises after the notice takes effect. (Civ. Code,[1] § 827, subd. (a).) A regulation promulgated by San Francisco's Rent Board provides that notwithstanding any changes to the terms of a tenancy under section 827, a tenant may not be evicted for violating an obligation that was not included in the tenant's original rental agreement unless the change is authorized by San Francisco's rent control

---

[1] All undesignated statutory references are to the Civil Code. All undesignated rule references are to the specified section of the rules and regulations of the San Francisco Rent Stabilization and Arbitration Board (Rent Board).

1

ordinance,[2] is required by law, or is accepted by the tenant in writing. (Rule 12.20.) The primary question in this appeal is whether section 827 preempts Rule 12.20. The remaining questions are (1) whether the Rent Board exceeded its powers when it adopted Rule 12.20, and (2) whether it exceeded its powers when it adopted Rule 6.15C, which limits the rent a master tenant may charge to a subtenant but provides that a violation of that limitation is not a basis for eviction.

We conclude that section 827 does not preempt Rule 12.20 and that the Rent Board did not exceed its powers in adopting the challenged regulations. Accordingly, we shall affirm the judgment of the trial court.

## I.   THE RENT ORDINANCE AND RENT BOARD

"In 1979, the San Francisco Board of Supervisors (Supervisors) adopted a comprehensive rental-housing ordinance known as the San Francisco Residential Rent Stabilization and Arbitration Ordinance. [Citation.] The Supervisors adopted the Rent Ordinance because the lack of affordable rental housing in San Francisco was creating hardships on senior citizens, persons on fixed incomes, and low- and moderate-income households. [¶] When adopting the Rent Ordinance, the Supervisors created a five-member Rent Board charged with safeguarding tenants from excessive rent increases, while also assuring landlords fair and adequate rents consistent with federal anti-inflation guidelines. The Rent Ordinance mandated that the Rent Board be comprised of two landlord commissioners, two tenant commissioners, and one member who would be neither a landlord nor a tenant. (Rent. Ord., § 37.4, subds. (a) & (b).) The Supervisors conferred on the Rent Board a range of powers and duties, including the power to 'Promulgate policies, rules and regulations to effectuate the purposes of this Chapter.' (Rent. Ord., § 37.6, subd. (a).) The purposes of the Rent Ordinance included, among others, the limitation of rent increases for tenants in occupancy (Rent Ord., § 37.3), the arbitration of rental increase adjustments (Rent Ord., §§ 37.8–378B), and the restriction

---

[2] S.F. Admin. Code, ch. 37, Residential Rent Stabilization and Arbitration Ordinance (Rent Ordinance).

of the grounds on which landlords could evict tenants from their rental units (Rent Ord., §§ 37.9–37.9B).” (*Danekas v. San Francisco Residential Rent Stabilization & Arbitration Bd.* (2001) 95 Cal.App.4th 638, 641–642 (*Danekas*).)

## II. BACKGROUND

Plaintiff Margaret D. Foster[3] has lived for more than 40 years in an apartment in a multi-unit building (the building) now owned by defendant and cross-complainant John F. Britton and managed by defendant and cross-complainant W.J. Britton & Co., Inc. (collectively, “Britton”). After buying the building in 2011, Britton served the tenants, including plaintiff, with “House Rules.” Among other provisions, the house rules required tenants to share the back yard equally, unless all tenants agreed otherwise; to maintain their own garbage service; to keep all property inside the unit, out of view; and to use an outside laundromat rather than washing clothes in the sinks or tubs in their units. It also prohibited tenants from having pets and from storing their belongings anywhere except in their rental units or areas designated by the landlord. The document setting forth the new “House Rules” stated that the rules superseded all previous house rules, that they went into effect 30 days from receipt, and that “Tenant accepts the House Rules by remaining in possession after they come into effect and paying rent each month. If Tenant does not accept the House Rules, Tenant may opt to give 30 days’ written notice to Landlord to terminate his or her tenancy and move out.” Britton informed plaintiff that, under the new house rules, she would no longer be able to store personal property outside her unit. Plaintiff responded that the longstanding terms of her tenancy included garbage service, two parking spaces, an assigned area in the back yard, specific storage spaces, and the use of her service porch for laundry and storage. She informed

---

[3] There were originally two additional plaintiffs in this case. One of them, Sherriann Ireton, was dismissed from the case in November 2011. The other, Sherida Ireton (“Ireton”), died during the course of the litigation and was also dismissed from the action. Thus, by the time the trial court entered judgment, Foster was the sole remaining plaintiff. We shall refer to her as “plaintiff” or “Foster.”

Britton she did not agree to any unilateral changes to her rental agreement. In the ensuing dispute, Britton took the position that section 827, subdivision (a) preempted Rule 12.20.

Foster brought this action, alleging she was a long-term resident of the building and that the house rules conflicted with terms and conditions that had always been included in her rental agreement, including exclusive use of two parking spaces, use of a service porch for storage and laundry facilities, exclusive use of assigned garden areas, use of storage spaces, and inclusion of garbage service in her rental payments. She sought a declaration that (1) section 827 did not preempt Rule 12.20, and (2) Rule 12.20 barred the eviction of any tenant based on unilaterally-imposed house rules. She also sought an injunction prohibiting defendants from attempting to evict her based on a violation of the house rules. The Rent Board intervened in the action, seeking a declaration that Rule 12.20 was not preempted by section 827.

Britton cross-complained against the Rent Board, seeking injunctive relief and a declaration that (1) section 827 preempted Rule 12.20, and (2) Rules 12.20 and 6.15C modified, conflicted with, or provided exceptions to the grounds for eviction found in the Rent Ordinance and the Rent Board exceeded its authority it enacting them.

Plaintiff moved for summary judgment or summary adjudication on the grounds that section 827 did not preempt Rule 12.20 and that Rule 12.20 barred the eviction of a tenant for violating unilaterally-imposed house rules that contradicted a pre-existing rental agreement.[4] The trial court ruled that plaintiff was entitled to a declaration that section 827 did not preempt Rule 12.20 and that the Rent Board did not exceed its powers when it adopted Rule 12.20. The court found the issue of whether Rule 12.20 barred the eviction of a tenant for violating unilaterally-imposed house rules not ripe for review,

_____

[4] Britton disputed plaintiff's factual contentions that certain amenities, to wit, use of the parking spaces, use of the service porch for storage and laundry, exclusive use of assigned garden areas, use of storage spaces, and inclusion of garbage service in her rental payments, had always been included in her rental agreement. That factual dispute does not affect the resolution of the legal issues before us in this appeal.

4

because there was no eviction action pending, and therefore plaintiff was not entitled to declaratory relief on this claim. Accordingly, the court granted summary adjudication to plaintiff as to the first issue only. Plaintiff subsequently dismissed the second issue without prejudice.

The Rent Board demurred to Britton's cross-complaint and moved for judgment on the pleadings as to the complaint in intervention on the grounds that Rule 12.20 was a valid exercise of the police power, that section 827 did not preempt Rule 12.20, and that the Board did not exceed its powers when adopting Rule 12.20. The trial court granted the Rent Board's motion for judgment on the pleadings, ruling it was entitled to a declaration that that section 827 did not preempt Rule 12.20. It also sustained the Rent Board's demurrer to the cross-complaint's causes of action concerning Rule 12.20.

The Rent Board and Britton then litigated the question of whether the Rent Board had exceeded its powers when it enacted Rule 6.15C. The Rent Board moved for judgment on the pleadings as to the cross-complaint on the grounds that Britton lacked standing to challenge Rule 6.15C, subd. (3) and that the Rent Board did not exceed its powers in adopting it. The trial court granted the motion with leave to amend to allege standing. Britton amended the cross-complaint to allege that W.J. Britton & Co., Inc. was an unincorporated association of landlords and owners of rental property, that it managed and represented the rights of numerous landlords in San Francisco, and that it brought suit in its representative capacity on behalf of its members to challenge the Rent Board's action. The Rent Board demurred to the amended cross-complaint on the ground that it did not exceed its powers in adopted Rule 6:15C, subd. (3), but it did not argue that Britton lacked standing to challenge the regulation. The trial court granted the demurrer with leave to amend to allege facts showing Rule 6.15C, subd. (3) was not reasonably necessary to effectuate the purpose of the Rent Ordinance and that it was arbitrary, capricious, or without reasonable basis. Britton filed a second amended cross-complaint, to which the Rent Board demurred, again on the sole ground that it did not exceed its powers in enacting Rule 6.15C, subd. (3). The trial court granted the demurrer without

leave to amend. The court then entered judgment in favor of Foster and the Rent Board in accordance with its previous orders.[5]

## III. DISCUSSION

### A. Preemption

The first question before us is whether the trial court correctly ruled that section 827 does not preempt Rule 12.20.[6] Whether Rule 12.20 is preempted by state law is a question of law that we review de novo. (*Roble Vista Associates v. Bacon* (2002) 97 Cal.App.4th 335, 339; *Bravo Vending v. City of Rancho Mirage* (1993) 16 Cal.App.4th 383, 391–392.)

Rule 12.20 provides in pertinent part: "Notwithstanding any change in the terms of a tenancy pursuant to Civil Code section 827, a tenant may not be evicted for violation of a covenant or obligation that was not included in the tenant's rental agreement at the inception of the tenancy unless: (1) the change in the terms of the tenancy is authorized by the Rent Ordinance or required by federal, state or local law; or (2) the change in the terms of the tenancy was accepted in writing by the tenant after receipt of written notice from the landlord that the tenant need not accept such new term as part of the rental agreement."

---

[5] The Rent Board does not contend on appeal that Britton lacked standing or that the question of the propriety of Rule 6.15C was not properly before the court, and we do not consider the issue.

[6] Britton's opening brief on appeal violates the rule that each argument be presented under a separate heading. (Cal. Rules of Court, rule 8.204(a)(1)(B); *Goehring v. Chapman University* (2004) 121 Cal.App.4th 353, 372.) In addition, the opening brief is replete with factual assertions that lack any citation to the record. (Cal. Rules of Court, rule 8.204(a)(1)(C).) We may treat arguments not properly presented as forfeited. (*Consolidated Irrigation Dist. v. City of Selma* (2012) 204 Cal.App.4th 187, 201.) In the interest of justice, we shall respond to the legal arguments Britton makes; however, to the extent we fail to address a point made in the opening brief, the issue is treated as forfeited.

6

Britton argues that in order to avoid preemption, we should interpret Rule 12.20 to mean that unilaterally-imposed changes to the terms of a lease become part of the conditions of the lease if the tenant "agrees" to the changes by remaining in possession of the premises, even if the changes are not authorized by the Rent Ordinance, required by law, or agreed to in writing by the tenant. This reading of Rule 12.20 flies in the face of the plain language of the regulation, which prohibits eviction for violating unilaterally-imposed changes to the terms of a tenancy unless one of those conditions is met. We shall assume that the regulation means what it says and proceed to consider whether, so viewed, it is preempted by section 827.

A local law may conflict with a statute either directly or by implication. (*Fisher v. City of Berkeley* (1984) 37 Cal.3d 644, 705–709 (*Fisher*).) We may infer the Legislature intended to preempt a field "only if ' "(1) the subject matter has been so fully and completely covered by general law as to clearly indicate that it has become exclusively a matter of state concern; [or] (2) the subject matter has been partially covered by general law couched in such terms as to indicate clearly that a paramount state concern will not tolerate further or additional local action; or (3) the subject has been partially covered by general law, and the subject is of such a nature that the adverse effect of a local ordinance on the transient citizens of the state outweighs the possible benefit to the municipality." ' [Citations.]" (*Id*. at p. 708.)

In considering the question before us, we bear in mind that our Supreme Court has upheld challenges to local rent control legislation against preemption challenges in the past. The court in *Birkenfeld v. City of Berkeley* (1976) 17 Cal.3d 129 (*Birkenfeld*), considered the City of Berkeley's rent control law, which had been passed by an initiative amendment to the city charter. In doing so, the court made a distinction between local limitations placed on the *substantive* grounds for eviction and the local laws' establishment of "*procedural* barriers between the landlord and the judicial proceeding" that exceed those established by state law. (*Id*. at pp. 135, 151, italics added.) The court

7

invalidated Berkeley's rent control law to the extent it required a landlord to obtain a certificate of eviction from the city before seeking to evict a tenant pursuant to the summary repossession provisions of Code of Civil Procedure sections 1159 through 1179a. As the court explained, "To require landlords to fulfill the elaborate prerequisites for the issuance of a certificate of eviction by the rent control board before they commence the statutory proceeding would nullify the intended summary nature of the [state law] remedy." (*Birkenfeld*, 17 Cal.3d at p. 151.)

The court upheld, however, the *substantive* limitations on grounds for eviction against a challenge that they conflicted with state law. The court first concluded the city had the power to provide for rent control. It reasoned, "The fact that the charter amendment prohibits landlords of residential units within the city from charging more than the maximum rents prescribed by a municipal rent control board under specified standards does not bring the amendment into conflict with general state law. California has no state rent control statute. There is of course extensive state legislation governing many aspects of landlord-tenant relationships, some of which pertain specifically to the determination or payment of rent. (See, e.g., Civ. Code, § 827 (changing rent terms in tenancies of one month or less); [citations].) But neither the quantity nor the content of these statutes establishes or implies any legislative intent to exclude municipal regulation of the amount of rent based on local conditions. [Citation.] The charter amendment's purpose of preventing exploitation of a housing shortage through excessive rent charges is distinct from the purpose of any state legislation, and the imposition of rent ceilings does not materially interfere with any state legislative purpose. [Citation.] *Whether the relevant field be deemed to be rent control as such or a broader aspect of landlord-tenant relations* [citation]*, there is no legislative indication of 'a paramount state concern [which] will not tolerate further or additional local action.'* [Citation.]" (*Birkenfeld*, *supra*, 17 Cal.3d. at pp. 141–142, fn. omitted, italics added.)

8

The court went on to conclude that the local rent control law's restriction on the grounds for eviction did not conflict with general law. The court explained that the charter amendment provided for eviction for numerous reasons, including a violation of the tenant's duties to the landlord, such as the duty to pay rent or not to use the premises for illegal purposes, the landlord's good faith intention to withdraw the unit from the rental market, and the tenant's refusal to execute a written renewal of the lease, on materially the same terms, upon expiration of the lease. (*Birkenfeld*, *supra*, 17 Cal.3d at pp. 147–149.) These grounds, the court noted, appeared to "cover most if not all of the grounds that would otherwise be available except that of termination of the tenancy," and the prohibition of eviction upon expiration of the tenancy was a "reasonable means of enforcing rent ceilings by preventing landlords from putting out tenants because of their unwillingness to pay illegal amounts of rent . . . ." (*Id*. at p. 148.) The court rejected the contention that this prohibition conflicted with the unlawful detainer law, under which a landlord may recover possession in summary proceedings if a tenant continues in possession after the expiration of the term of a lease. (*Id*. at pp. 148–149; Code Civ. Proc., § 1161, subd. 1.) The court explained: "The purpose of the unlawful detainer statutes is procedural. The statutes implement the landlord's property rights by permitting him to recover possession once the consensual basis for the tenant's occupancy is at an end. In contrast the charter amendment's elimination of particular grounds for eviction is a limitation upon the landlord's property rights under the police power, giving rise to a substantive ground of defense in unlawful detainer proceedings. The mere fact that a city's exercise of the police power creates such a defense does not bring it into conflict with the state's statutory scheme." (*Birkenfeld*, 17 Cal.3d at p. 149.)

Following *Birkenfeld*, our high court in *Fisher*, *supra*, 37 Cal.3d at pp. 699–700, 705–709, concluded that another provision of Berkeley's rent control ordinance—allowing a tenant to withhold rent and providing a defense to unlawful detainer if the tenant believed in good faith that the landlord had not complied with certain

9

obligations—was not preempted by general law.  The court explained, "as we observed in *Birkenfeld*, this exercise of the municipality's police power does not bring the provision into conflict with state law, because the statutory remedy for recovery of possession does not preclude limitations on grounds for eviction for the purpose of enforcing a local rent control regulation." (*Birkenfeld*, *supra*, 17 Cal.3d at p. 707.)

Our high court also discussed the application of the general rules of preemption to the rent control ordinance, and concluded the state had neither occupied the field of "rent withholding" in a manner that clearly indicated the field was solely a matter of state concern nor indicated that the field of "rent withholding" was a subject of paramount state concern that could not tolerate local involvement, and that the provisions would have little effect on transient citizens.  (*Id*. at p. 709.)

Our colleagues in Division Three of this court reviewed *Birkenfeld* and *Fisher* and summarized, "Thus, under existing law, municipalities may by ordinance limit the substantive grounds for eviction by specifying that a landlord may gain possession of a rental unit only on certain limited grounds.  [Citations.]  But they may not procedurally impair the summary eviction scheme set forth in the unlawful detainer statutes and they may not alter the Evidence Code burdens of proof.  [Citations.]" (*Rental Housing Assn. of Northern Alameda County v. City of Oakland* (2009) 171 Cal.App.4th 741, 754 (*Rental Housing Assn.*).)  Thus, the court stated, "a local rent control ordinance may permissibly eliminate a ground for eviction specified in Code of Civil Procedure 1161 without creating a conflict with the unlawful detainer statutes.  [Citations.]"[7] (*Id*. at pp. 764–765.)

_____

[7] Code of Civil Procedure section 1161 specifies the acts that make a tenant guilty of unlawful detainer; these include staying in possession after the term of the lease, remaining in possession after default in payment of rent and three days' notice, and remaining in possession after failing to perform other conditions or covenants of the lease.

Britton contends Rule 12.20 is preempted by section 827. Subdivision (a) of that statute provides where a lease is from week to week, month to month, or another period of less than a month, a landlord may, upon giving notice as provided in Code of Civil Procedure section 1162, "change the terms of the lease . . . as to tenancies from month to month, to take effect at the expiration of not less than 30 days . . . ; provided, however, that it shall be competent for the parties to provide by an agreement in writing that a notice changing the terms thereof may be given at any time not less than seven days before the expiration of a term, to be effective upon the expiration of the term. [¶] The notice, when served upon the tenant, shall in and of itself operate and be effectual to create and establish, as a part of the lease, the terms, rents, and conditions specified in the notice, if the tenant shall continue to hold the premises after the notice takes effect." Subdivision (b) provides that in all leases of residential dwellings from week to week, month to month, or a period less than a month, "the landlord may increase the rent provided in the lease or rental agreement, upon giving written notice to the tenant" either by personal service or by mail pursuant to Code of Civil Procedure section 1013. (§ 827, subd. (b)(1).)[8] Subdivisions (b)(2) and (b)(3) establish notice periods based on the amount of the rental increase. Finally, subdivision (c) of section 827 provides: "If a state or federal statute, state or federal regulation, recorded regulatory agreement, or contract provides for a longer period of notice regarding a rent increase than that provided in subdivision (a) or (b), the personal service or mailing of the notice shall be in accordance with the longer period."

As we have described, under *Birkenfeld* and its progeny, a municipality has authority to limit the substantive grounds for eviction, but it may not interfere with the procedural protections offered by state law. (*Birkenfeld*, *supra*, 17 Cal.3d at pp. 140–153; *Rental Housing Assn.*, *supra*, 171 Cal.App.4th at p. 754.) Nothing in Rule 12.20

_____

[8] There appears to be no dispute that Foster's tenancy was month-to-month.

11

interferes with the notice procedures required by section 827, or any other procedural protections. Rather, its effect is to regulate the substantive grounds on which a landlord may evict a tenant.

We do not agree with Britton that section 827 was intended to limit the substantive grounds for eviction. Subdivision (a) of section 827 provides that in "all leases of lands or tenements," the landlord may change the terms of the lease, *including* "*terms, rents, and conditions*," after giving the notice required by the statute. (Italics added.) Similarly, subdivision (b) provides that in "all leases of a residential dwelling," "the landlord may increase the rent provided in the lease or rental agreement," after giving the specified notice. Despite theses references to rent, our high court has explicitly concluded that section 827 does not "establish[] or impl[y] any legislative intent to exclude municipal regulation of the amount of rent based on local conditions." (*Birkenfeld*, *supra*, 17 Cal.3d at p. 142.) We see no principled basis to conclude that in enacting section 827, the Legislature intended unilateral changes in rent—which section 827 does not preempt—to be treated differently than unilateral changes in other terms of a lease. Viewing the statute as a whole in light of the governing precedent, we conclude its purpose is to establish procedural safeguards for tenants when landlords raise the rent or change other terms of the tenancy, and not to prevent local governments from regulating the substantive grounds for eviction.

Accordingly, we reject Britton's contention that Rule 12.20 conflicts with or is preempted by state law.[9]

## B. The Board Did Not Exceed its Authority in Promulgating Rule 12.20

As a second challenge to Rule 12.20, Britton contends the Rent Board exceeded its authority in promulgating it. According to Britton, the Rent Ordinance sets out

---

[9] We do not consider the unpublished superior court cases cited by Britton. (Cal. Rules of Court, rule 8.1115(a); *Neary v. Regents of University of California* (1992) 3 Cal.4th 273, 282.)

12

exceptions to the allowable grounds for eviction, and Rule 12.20's prohibition on evicting tenants for violating unilaterally-imposed terms of the tenancy improperly created an additional exception and constituted improper legislation by the Rent Board. As a result, Britton argues, Rule 12.20 did not further the purposes of the Rent Ordinance.

The principles we apply to such a claim are well established. "When reviewing the legality of a regulation adopted pursuant to a delegation of legislative authority, we are limited to determining (1) whether the regulation is within the scope of the authority conferred; and (2) whether the regulation is reasonably necessary to effectuate the purpose of the statute. [Citations.] 'In enacting such rules and regulations, the [Rent Board] is empowered to " 'fill up the details' " of the enabling legislation. [Citation.] The court's role is to decide whether in enacting the specific rule the [Rent Board] reasonably interpreted the legislative mandate. [Citation.]' [Citation.] 'As a general proposition, administrative regulations are said to be "shielded by a presumption of regularity" [citation] and presumed to be "*reasonable and lawful*." [Citation.] The party challenging such regulations has the burden of proving otherwise. [Citation.]' [Citation.]" (*Danekas*, *supra*, 95 Cal.App.4th at p. 644.) "In deciding whether the regulation conflicts with its legislative mandate, however, the court does not defer to the agency's interpretation of the law under which the regulation issued, but rather exercises its own independent judgment." (*Lazarin v. Superior Court* (2010) 188 Cal.App.4th 1560, 1569.)

The enabling legislation here is the Rent Ordinance, which grants the Rent Board the power to "[p]romulgate policies, rules and regulations to effectuate the purposes of" the Rent Ordinance. (Rent Ord., § 37.6, subd. (a).)

The premise of Britton's argument is that the Rent Ordinance established certain grounds for eviction and enumerated certain exceptions to those grounds; relying on the legal maxim *expressio unius est exclusio alterius*, Britton contends that by specifying

13

these exceptions, the Supervisors implicitly precluded the Rent Board from creating additional exceptions.

As Britton notes, section 37.9 of the Rent Ordinance prohibits a landlord from evicting a tenant except in certain circumstances, among them when the tenant fails to pay rent (Rent Ord., § 37.9, subd. (a)(1)), violates a lawful obligation of the tenancy (*id*., subd. (a)(2)), commits a nuisance or damages the unit (*id*., subd. (a)(3)), uses the premises for an illegal purpose (*id*., subd. (a)(4)), or refuses the landlord lawful access to the unit (*id*., subd. (a)(6)); the landlord may also, if acting in good faith, recover possession of the unit for occupancy by the landlord or a relative or for specified other reasons (*id*., subds. (a)(8)–(15)).

Britton focuses on section 37.9, subdivision (a)(2), which authorizes a landlord to evict a tenant when "[t]he tenant has violated a lawful obligation or covenant of tenancy other than the obligation to surrender possession upon proper notice or other than an obligation to pay a charge prohibited by Police Code Section 919.1," and the tenant fails to cure the violation after receiving written notice. This subdivision then goes on to provide for two exceptions. "[N]otwithstanding any lease provision to the contrary, a landlord shall not endeavor to recover possession of a rental unit as a result of subletting of the rental unit by the tenant if the landlord has unreasonably withheld the right to sublet following a written request by the tenant," so long as certain conditions are met (Rent Ord., § 37.9, subd. (a)(2)(A)). Further, "where a rental agreement or lease provision limits the number of occupants or limits or prohibits subletting or assignment, a landlord shall not endeavor to recover possession of a rental unit as a result of the addition to the unit of [specified relatives of the tenant], so long as the [specified] number of occupants . . . is not exceeded . . . ." (Rent. Ord., § 37.9, subd. (a)(2)(B)). By enacting these provisions, Britton contends, the Supervisors established exceptions to the landlord's right to evict a tenant for violating a lawful obligation of the tenancy, and, by implication, prohibited the Rent Board from "legislating" additional exceptions.

14

According to Britton, the Rent Board was authorized to effectuate only the purposes of the Rent Ordinance, and the Rent Ordinance showed an intent to establish only the specified exceptions and no others.

In *Danekas*, our colleagues in Division Five of this court considered a contention that another Rent Board regulation, Rule 6.15A, exceeded the scope of the Rent Board's authority. Rule 6.15A established rules to be applied when a lease or rental agreement prohibited subletting or assignment.[10] The plaintiff in *Danekas* contended that the Rent Ordinance limited the Rent Board to the regulation of rent increases, based on language in the "Findings" portion of the Rent Ordinance stating that the Rent Board was created " 'in order to safeguard tenants from excessive rent increases and, at the same time, to assure landlords fair and adequate rents consistent with Federal Anti-Inflation Guidelines.' " (*Danekas*, *supra*, 95 Cal.App.4th at pp. 644–645; Rent Ord., § 37.1, subd. (b)(6).) The court rejected this contention, stating, "In fixing on this language alone, Danekas interprets the purposes of the Rent Ordinance too narrowly and without regard to certain other provisions of the ordinance that demonstrate an intent by the Supervisors to regulate the permissible grounds for tenant evictions. . . . [¶] In this instance, the Rent Ordinance contains entire sections devoted to regulating the bases on which landlords can evict tenants from their rental units, along with the procedures landlords must follow to do so. (Rent Ord., §§ 37.9, 37.9B.) *Regulating the grounds for eviction is integral to the success of the statutory framework, because the Rent Ordinance*

_____

[10] Rule 6.15A required the landlord to give conspicuous written notice of any absolute prohibition in order for a sublet or assignment to constitute a ground for termination of a tenancy; altered the circumstances in which a landlord could not assert a breach of a lease by a tenant who replaced a tenant roommate without the landlord's consent; set a time limit for a landlord to respond to a request to sublease a unit; set forth a process for establishing when a landlord had unreasonably withheld consent to sublet; and provided that failure to consent to a replacement tenant could constitute a decrease in housing services entitling the tenant to a reduced rent. (*Danekas*, *supra*, 95 Cal.App.4th at p. 643.)

15

*permits unlimited rent increases whenever a rental unit becomes vacant.* (Rent Ord., § 37.3.) As soon as an original tenant no longer permanently resides in a rental unit, the rent for that unit is temporarily decontrolled, allowing the landlord to boost the rent as high as the market permits. Once the unit is re-rented, it again becomes subject to the Rent Ordinance under a regulatory concept known as 'vacancy decontrol/recontrol.' Under this framework, governing the grounds for eviction is essential to the successful implementation of the Rent Ordinance, lest landlords circumvent the rent limitations by expelling tenants in order to raise rents. To prevent this activity, section 37.9 of the Rent Ordinance enumerates the acceptable grounds for tenant eviction. The inclusion of these provisions within the Rent Ordinance is an unmistakable expression of intent by the Supervisors that one purpose of their legislation was to implement comprehensive eviction controls, thereby sustaining the overall legislative structure. Since the Supervisors explicitly provided the Rent Board with the power to promulgate rules and regulations to effectuate the purposes of the Rent Ordinance, *the legislation gives the Rent Board authority to fashion regulations to govern effectively the grounds for eviction and the eviction process.*" (*Danekas*, *supra*, 95 Cal.App.4th at pp. 645–646, italics added.)

It can hardly be doubted that Rule 12.20 acts to govern "the grounds for eviction" (*Danekas*, *supra*, 95 Cal.App.4th at p. 646): It prohibits a landlord from evicting a tenant for violating a unilaterally-imposed term of the tenancy unless it is authorized by the Rent Ordinance, required by law, or agreed to by the tenant. Moreover, it may fairly be seen as effectuating the purposes of the Rent Ordinance because it prevents landlords from "circumvent[ing] the rent limitations" by unilaterally imposing unreasonable conditions that might allow them to "expel[] tenants in order to raise rents." (*Danekas*, at p. 645.)

Other portions of the Rent Ordinance support the conclusion that Rule 12.20 effectuates the ordinance's purposes. The ordinance defines "Housing Services" to mean "Services provided by the landlord connected with the use or occupancy of a rental unit,

16

including but not limited to . . . laundry facilities and privileges; . . . refuse removal; . . . parking; . . . rights permitted the tenant by agreement; . . . and any other benefits, privileges or facilities." (Rent Ord., § 37.2, subd. (g).) "Rental Units" are defined to mean residential dwelling units, "and all housing services, privileges, furnishings and facilities supplied in connection with the use or occupancy thereof, including garage and parking facilities." (*Id*., subd. (r).) Moreover, the ordinance provides that "[g]arage facilities, parking facilities, driveways, storage spaces, laundry rooms, decks, patios, or gardens on the same lot . . . supplied in connection with the use or occupancy of a unit, may not be severed from the tenancy by the landlord without just cause as required by section 37.9(a)." (*Ibid*.)[11]

Section 37.9, subdivision (a)(2) of the Rent Ordinance allows a landlord to evict a tenant who has violated a lawful obligation of tenancy; Rule 12.20 " ' "fill[s] up the details" ' " of the Rent Ordinance by clarifying that a "lawful obligation or covenant of tenancy" does not include a unilaterally-imposed obligation to give up housing services associated with a rental unit, which include parking, laundry facilities, trash service, garden privileges, and storage spaces. (*Danekas*, *supra*, 95 Cal.App.4th at p. 644; Rent Ord., §§ 37.2, subds. (g) & (r), 37.9, subd. (a)(2).)[12] The regulation is within the scope of the authority granted to the Rent Board, and it serves the purposes of the Rent Ordinance.

_____

[11] An exception exists that allows a landlord to temporarily sever one or more housing services in order to perform mandatory seismic work. (Rent Ord., § 37.2, subd. (r).)

[12] We are not swayed by Britton's suggestion that the tenants' "exclusive use of 'assigned' areas of the backyard, use of the back porch for storage and their own self-installed washing machines, exclusive use of free parking spaces, [and] permission to keep pets" constituted "ridiculous liberties" or that tenants who did not agree to give up those privileges would "run amuck without rules." To a large extent, these privileges appear to fall within the definition of "Housing Services." (Rent Ord., § 37.2, subd. (g).) Britton also complains that the use of the washing machines on the back porch decks violated the San Francisco Fire Code and led to a Notice of Violation by the San Francisco Fire Department. However, Britton makes no effort to explain why such a

17

### C. The Board Did Not Exceed its Authority in Promulgating Rule 6.15C

In Rule 6.15C, the Rent Board established regulations governing "Master Tenants," defined as "a landlord who is not an owner of record of the property and who resides in the same rental unit with his or her tenant." (Rule 6.15C, subd. (1).) Of particular interest here, the regulation provides that if a master tenant does not sublease the entire rental unit, "then the Master Tenant may charge the subtenant(s) no more than the subtenant(s) proportional share of the total current rent paid to the landlord by the Master Tenant for the housing and housing services to which the subtenant is entitled under the sub-lease. A master tenant's violation of this section shall not constitute a basis for eviction under Section 37.9." (Rule 6.15C, subd. (3).) The rule authorizes either the master tenant or the subtenant to petition the Rent Board for an adjustment of the rent. (Rule 6.15C, subd. (3)(b).)

Britton does not challenge the entirety of this regulation—indeed, Britton refers to the limitation on the rent a master tenant may charge as "admirable legislation"—but rather directs his challenge to the final sentence, which provides that a master tenant may not be evicted for charging subtenants more than their proportional share of the rent. Britton argues that it "makes no logical sense" to prevent the landlord from enforcing the master tenant's obligation, and that a violation of that obligation "**should be** enforceable by eviction." Britton contends the Board impermissibly created an exception to the Rent Ordinance's grounds for eviction and that the exception is inconsistent with the purposes of the ordinance.

We disagree. We have already explained that the Supervisors delegated to the Rent Board the authority to promulgate regulations governing the grounds for eviction,

---

code violation would not fall within Rule 12.20's provision that a tenant may be evicted for violating a unilateral change in the terms of the tenancy if the change is required by local law. In any case, the record does not show Britton has tried to evict plaintiff, and these factual questions are not before us.

and it cannot be disputed that the challenged portion of Rule 6.15C regulates the grounds for eviction. (*Danekas*, *supra*, 95 Cal.App.4th at pp. 645–646.) We also conclude that in providing that master tenants may not be evicted for overcharging subtenants, the Rent Board "reasonably interpreted the legislative mandate." (*Id.* at p. 644.) If a master tenant overcharges the subtenant, then the subtenant, not the landlord, is harmed. The Rent Board could reasonably leave the remedy for that harm in the hands of the subtenant, through a petition for a rent adjustment. It may well have had a sound policy reason for doing so. Once the last of the original occupants of a rental unit vacates the premises, the landlord may, subject to certain limitations, raise the rent charged to subsequent occupants to market rates without the constraint of rent control. (Civ. Code, § 1954.53, subds. (a) & (d)(2); Rent Ord., § 37.3, subd. (d)(2)(A); Rule 6.14; *T & A Drolapas & Sons, LP v. San Francisco Residential Rent Stabilization and Arbitration Bd.* (2015) 238 Cal.App.4th 646, 651–653; *Mosser Companies v. San Francisco Rent Stabilization and Arbitration Bd.* (2015) 233 Cal.App.4th 505, 511; *Danekas*, *supra*, 95 Cal.App.4th at p. 645.) Granting the power to evict a master tenant who overcharges subtenants would give a landlord an incentive to evict the master tenant in order to raise the rent to the market rate, thus harming the very subtenants the rule was enacted to protect. The Rent Board could reasonably conclude the limitation on evictions would serve the purposes of the Rent Ordinance by safeguarding tenants from excessive rent increases, and we will not disturb its judgment. (Rent Ord., § 37.1, subd. (b)(6).)

We are not persuaded otherwise by Britton's contention that subtenants who reside in the same rental unit as the master tenant will not complain of being overcharged because the master tenant can evict them without just cause. (Rule 6.15C, subd. (1).) Having created the master tenant's obligation not to overcharge subtenants, the Rent Board could reasonably decide to leave the remedy for a violation in the hands of the injured subtenant. Nor do we agree with Britton that the regulation creates an unauthorized exception to the rule that a landlord may evict a tenant for violating a lawful

19

covenant or obligation of the tenancy. (Rent Ord., § 37.9, subd. (a)(2).) Rather, the Rent Board has made clear that the obligation not to overcharge a subtenant is one the master tenant owes to the *subtenant*, not to the landlord.

### D. Trial Court's Decision Not to Adjudicate the Effect of Rule 12.20 on Evictions

One of the issues Foster raised in her motion for summary judgment was whether Rule 12.20 barred a landlord from evicting a tenant for violating unilaterally-imposed house rules. In opposing the motion, Britton argued the issue was not ripe because there was no eviction action pending. The trial court agreed with Britton: It found the issue was not ripe because there was no eviction case pending against Foster, and therefore she was not entitled to summary adjudication of this issue. Foster dismissed the issue without prejudice.

In a curious twist, Britton now argues the trial court erred in refusing to consider this ground for Foster's motion for summary judgment. The contention is untenable. Even if the trial court erred, Britton waived any error by arguing below that the issue was not ripe. (*City of Scotts Valley v. County of Santa Cruz* (2011) 201 Cal.App.4th 1, 29 ["when a party bears some responsibility for the claimed error, they are generally estopped from taking a different position on appeal or are deemed to have waived the error"].) In any case, any error in rejecting plaintiff's motion for summary adjudication as to this issue was on its face favorable to Britton, and therefore may not be challenged on appeal. (See *Marich v. MGM/UA Telecommunications, Inc.* (2003) 113 Cal.App.4th 415, 431 [appellant may not challenge favorable ruling on appeal].)

### IV. DISPOSITION

The judgment is affirmed.

_____

Rivera, J.

We concur:

_____

Ruvolo, P.J.

_____

Streeter, J.

Trial court: City and County of San Francisco

Trial judge: Hon. Ronald. E. Quidachay

Law Offices of Karen Y. Uchiyama, Karen Y. Uchiyama, for Defendants, Cross-complainants, and Appellants.

Tenderloin Housing Clinic, Inc., Matt McFarland, for Plaintiff and Respondent.

Offices of the City Attorney, Dennis J. Herrera, City Attorney, and Wayne K. Snodgrass and Tara M. Steeley, Deputy City Attorneys, for Intervenor, Cross-defendant, and Respondent.

*Foster v. Britton et al. (A139892)*