Filed 6/24/16  Cook v. Goncalves CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| KIMBERLY COOK, | B259037 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. SQ006469) |
| v. | |
| PAUL GONCALVES, | |
| Defendant and Appellant. | |

APPEAL from order of the Superior Court of Los Angeles County, Richard Montes, Judge.  Affirmed.

The Law Offices of Frances Prizzia and Frances Prizzia for Defendant and Appellant.

Ishimatsu Law Group and Bruce Leslie Ishimatsu for Plaintiff and Respondent.

_____

Appellant Paul Goncalves appeals from a five-year restraining order entered against him pursuant to the Domestic Violence Prevention Act (DVPA). (Fam. Code, § 6200 et seq.)[1]  The order protected respondent Kimberly Cook, her boyfriend James Cunningham, aunt Susan Hirsch, and father William Cook.  Goncalves challenges (1) the court's finding of "abuse" under section 6203; (2) the inclusion of Cunningham, Hirsch, and William Cook as additional protected persons; and (3) the denial of properly prepared and effective counsel.  Finding no abuse of discretion, we affirm.

## FACTUAL AND PROCEDURAL SUMMARY

Goncalves and Cook were in a relationship that Cook ended in October 2013.  The two continued to communicate by text message and telephone until December 2013.  On December 19, 2013, Cook sent Goncalves a text message, asking him not to text her.  Goncalves continued to send her text messages, questioning her about why she ended the relationship.  Cook responded to these messages.  Approximately 30 minutes later, Goncalves texted her, "[I']m coming to your house . . . tonight at 6 to tell you how I feel about you."  Cook responded, "[n]o way," "I won't be there," and "Don't threaten me."  He replied, "I'm not threatening you."  Cook then told him, "Do not come to my house.  I swear to God.  I will not handle that well.  Do not."  She also asked him to leave her alone.  He responded: "You won't handle it well because it will remind you of how poorly you handled this[]."  After she reiterated that she wanted to be left alone, Goncalves continued to send her text messages regarding the breakup and attempted to call her.  Later that evening, Cook saw Goncalves parked outside her house.  He proceeded to call her cell phone 32 times between the hours of 10:00 p.m. and 1:00 a.m.  She did not answer the calls.  She testified at the hearing that at the time she was really in fear.

In late December 2013, Goncalves sent Cook text messages telling her, "[y]ou're going to regret the day you did this to me, you immature witch," and "'I hope your fucking boyfriend cheats on you and no longer makes you feel safe, then starts dating

---

[1]  Subsequent section references are to the Family Code.

2

someone a week later, you fucking cunt.'" He also sent her a message calling her a "fucking evil person." On December 27, 2013, Goncalves sent Cook another series of text messages asking how she could move on so quickly and telling her how hurt he felt. Cook again told Goncalves that she wanted to be left alone. That same day, Goncalves left three threatening voicemails on her phone.

In early January 2014, Goncalves followed Cook as she was pulling into her work parking lot, and parked next to her. He lowered his window, yelled accusatory questions at her, exited his vehicle, and approached her vehicle, where he continued to question her about their relationship. Cook testified at the hearing that he was very animated, upset, and angry. She asked him to leave. Later that day, she went to the West Los Angeles Police Department and spoke with a detective about the incident in the parking lot and the prior incidents. On January 21, 2014, Cook received in the mail a six-page letter from Goncalves containing a "record of the terrible things [she] did and how it affected [him]." She testified at the hearing that the letter made her feel threatened.

In February 2014, Goncalves posted comments on an Instagram photo of Cook, tagging Cook in the comment. One comment read: "Those zits must be from stress from the shitty, dishonest, stressful life she needs. It's hard to be acting 100 percent of the time. #sociopath."

In March 2014, Cook observed Goncalves slowly driving past her house and parking around the corner. He exited his vehicle but returned when he saw her and drove away.

In May 2014, Cook was driving on Olympic Boulevard, when she saw Goncalves drive past his work and pull up in a lane next to her. He lowered his window, appeared to be very upset, and began yelling, swearing, and calling her names. She testified at the hearing that she was "really fearful," did not expect it, and that "[i]t came out of nowhere." She also testified that he gave her "the finger."

In early June 2014, Cook saw Goncalves walking his dog outside her work. When he saw her exit the building, he turned and walked away.

Cook filed for a temporary restraining order on June 12, 2014, and the court

3

granted it. The temporary restraining order included as additional protected persons James Cunningham and Susan Hirsch.

The hearing for the permanent order began on August 19, 2014 and concluded the next day. The court granted the restraining order for a period of five years, and included James Cunningham, Susan Hirsch, and William Cook as additional protected persons. In its statement of decision, the court explained that "[t]he issue in this case is the credibility of the witnesses. I categorically state that I disbelieve the respondent in all of the critical points that he testified to." The court also noted that the six-page letter Goncalves sent Cook "is a six-page document which someone might characterize as a rant, but it is the type of communication . . . that caused the legislature to pass this kind of legislation. That is, to prevent people like Mr. Goncalves from harassing and bothering other people." Finally, the court stated, "[i]n every critical point of disagreement, I disbelieve Mr. Goncalves. There's no other way to put it. I think he's lying. I think he lied under oath. And he's clearly somebody who cannot leave this person alone."

This timely appeal followed.

## DISCUSSION

### I

An order granting a protective order under the DVPA is reviewed for abuse of discretion.[2] (*In re Marriage of Nadkarni* (2009) 173 Cal.App.4th 1483, 1495.) In considering the evidence supporting such an order, we apply the substantial evidence standard of review. (*Burquet v. Brumbaugh* (2014) 223 Cal.App.4th 1140, 1143.) We

---

[2]    As a preliminary matter, we note that appellant's opening brief violates the rule that every factual assertion be supported by a citation to the record. California Rules of Court, rule 8.204(a)(1)(C) requires that a reference in a brief be supported with a citation to the volume and page number of the record where the matter appears. The rule applies to both the factual background and argument sections of a brief. (*City of Lincoln v. Barringer* (2002) 102 Cal.App.4th 1211, 1239, fn. 16.) In the interest of justice, we shall respond to the legal arguments Goncalves makes; however, to the extent we fail to address a point made in the opening brief, the issue is treated as forfeited. (*Foster v. Britton* (2015) 242 Cal.App.4th 920, 928, fn. 6.)

4

accept as true all evidence tending to establish the correctness of the trial court's findings and resolve every conflict in favor of the judgment. (*Ibid*.)

Pursuant to the DVPA, a court may issue an order to restrain any person for the purpose of preventing a recurrence of domestic violence and ensuring a period of separation of the persons involved, if an affidavit or testimony and additional information is provided to the court and shows reasonable proof of a past act or acts of abuse. (§ 6300; see also § 6220.)

The DVPA defines domestic violence as "abuse" perpetrated against enumerated individuals, including a "person with whom the respondent is having or has had a dating or engagement relationship." (§ 6211, subd. (c).) The statutory definition of abuse encompasses any behavior that has been or could be enjoined pursuant to section 6320. (§ 6203.) The behaviors outlined in section 6320 include "stalking, threatening, . . . harassing, telephoning, . . . contacting, either directly or indirectly, by mail or otherwise, coming within a specified distance of, or disturbing the peace of the other party."

The court did not abuse its discretion in finding that Goncalves' behavior between the end of his relationship with Cook in late 2013 and June 2014 amounted to "abuse" within the meaning of section 6320. Instead of accepting that the relationship was over, Goncalves persisted in harassing Cook through telephone calls and text messages, demanding answers as to why she ended the relationship. In December 2013, he threatened to come to her house, after she asked him not to, drove to her house, parked his car outside, and proceeded to call her cell phone 32 times over a four-hour period. In January 2014, he followed her into her work parking lot, parked next to her, and continued to confront her about their relationship. In late January 2014, he mailed her a six-page letter, ranting about the way she had treated him and ended the relationship. In February 2014, he harassed her over social media, writing demeaning comments about her on an Instagram photo. Over the next three months he stalked her at her home and place of work, and he harassed her at a stoplight on Olympic Boulevard, swearing and calling her names. Because this conduct amounted to harassing and stalking behavior,

5

there was substantial evidence to support the trial court's finding of abuse under section 6320.  The same conduct also constitutes a disruption of the peace.  (See *Burquet v. Brumbaugh, supra,* 223 Cal.App.4th at pp. 1142-1143, 1146-1147 [substantial evidence supporting restraining order where no evidence of physical abuse, but restrained party disturbed peace of ex-girlfriend by e-mailing, sending her text messages, and showing up unannounced at her home].)

Goncalves relies on *S.M. v. E.P.* (2010) 184 Cal.App.4th 1249 for his claim that in order for conduct to be considered "abuse" under the DVPA the petitioner must fear for his or her personal safety.  This reliance is misplaced.  In that case, the Court of Appeal did not analyze the parameters of abusive conduct under the DVPA.  Rather, the court considered whether the husband's conduct as determined by the trier of fact constituted "abuse."  The wife testified that the couple were engaged in a heated conversation about the wife taking their child out of state when the husband ripped the covers off the bed and said he would kill her.  (*Id*. at p. 1258.)  But the trial court "specifically declined to find [the husband] had made a threat against [the wife]."  (*Id*. at p. 1265.)  According to the evidence credited by the trial court, the husband's conduct consisted of pulling the covers off the wife and denying her permission to leave the house, which the Court of Appeal held does not constitute "abuse" under the DVPA.  (*Id*. at p. 1266.)  In contrast, this case, as we have discussed, involved a pattern of stalking and harassing conduct, spanning a six-month period.  These behaviors are enumerated in section 6320 as conduct constituting "abuse."

Goncalves also argues that there was no evidence that he threatened physical harm or property destruction.  The definition of "abuse" under the DVPA is expansive and includes a multitude of behaviors that are not limited to physical harm or destruction or a threat of physical harm or destruction.  (*Burquet v. Brumbaugh, supra,* 223 Cal.App.4th at pp. 1146-1147; see also *Nakamura v. Parker* (2007) 156 Cal.App.4th 327, 334 [former husband's conduct in destroying mental or emotional calm of former wife by accessing, reading, and publicly disclosing her confidential emails constituted "abuse" under DVPA].)

Finally, Goncalves argues that the trial court's decision regarding credibility is unsupported by the record. On issues of credibility, we defer to the trier of fact (*Lenk v. Total-Western, Inc.* (2001) 89 Cal.App.4th 959, 968) because such determinations are within its exclusive province. (*Sabbah v. Sabbah* (2007) 151 Cal.App.4th 818, 823.)

II

Section 6320 provides that, upon a showing of good cause, a protective order may include named family or household members. Goncalves argues that the restraining order is overbroad in its inclusion of Cook's boyfriend Cunningham, aunt Hirsch, and father William Cook but does not cite authority to support his claim.[3] "'A judgment or order of the lower court is *presumed correct*. All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown.'" (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) "'To demonstrate error, appellant must present meaningful legal analysis supported by citations to authority and citations to facts in the record that support the claim of error.' [Citation.] '[C]onclusory claims of error will fail.' [Citation.]" (*Lister v. Bowen* (2013) 215 Cal.App.4th 319, 337.)

Furthermore, Cunningham lives with Cook and is entitled to protection as a household member, and Hirsch and William Cook are entitled to protection as family members. (§ 6320.) Because Goncalves has demonstrated an inability to accept that his relationship with Cook is over, Cunningham's status as Cook's new boyfriend makes him a natural target. Regarding Hirsch, Cook, in her request for a restraining order, wrote that Goncalves had contacted Hirsch in order to find Cook. Goncalves admitted that he had

---

[3] Goncalves cites two cases *People v. Delarosarauda* (2014) 227 Cal.App.4th 205 (*Delarosarauda*) and *People v. Beckemeyer* (2015) 238 Cal.App.4th 461 in his reply brief to support his claim, but as he acknowledges, both cases address postconviction orders governed by the Penal Code. The Penal Code sections addressed in those cases, sections 136.2, subdivision (i)(1), and 273.5, authorize a trial court to issue protective orders to protect either a victim or a witness in a criminal matter. Because Family Code section 6320 at issue in this case is more expansive and allows for protection orders to include family members and household members, we disagree with Goncalves that the principles of *Delarosarauda* and *Beckemeyer* guide the instant case.

contacted Hirsch and William Cook to talk about Cook. In his six-page letter, he said that he was not sorry for telling her aunt and her mom and dad "all the horrible things [she] did to [him]." In that same letter, Goncalves referenced a conversation he had with Hirsch, where he told her that he wanted answers from Cook. This evidence demonstrates that Goncalves contacted Cook's family in an attempt to further harass and stalk her.

III

Lastly, Goncalves argues that the court did not allow him to have properly prepared and effective counsel. This contention is without merit. The trial court allowed Goncalves' counsel the opportunity to cross examine Cook's witnesses, and to call Goncalves' own witnesses, and it continued the hearing an additional day, to allow Goncalves to introduce additional evidence.

**DISPOSITION**

The order is affirmed. Cook is entitled to her costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.**

EPSTEIN, P. J.

We concur:

MANELLA, J.

COLLINS, J.

8