Filed 8/1/22

**CERTIFIED FOR PUBLICATION**

APPELLATE DIVISION OF THE SUPERIOR COURT

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

| | | |
|---|---|---|
| DANIEL ARCHE et al. | ) | BV 033632 |
| Plaintiffs and Appellants, | ) | Long Beach Trial Court |
| v. | ) | No. 21LBUD00480 |
| JAMES SCALLON, | ) | |
| Defendant and Respondent. | ) | **OPINION** |

APPEAL from a judgment of the Superior Court of Los Angeles County, Mark C. Kim, Judge.  Affirmed.

Layne L. Liddle, George Lee Liddle, Jr., and Raymond Zakari, Law Offices of Liddle and Liddle, for Plaintiffs and Appellants Daniel Arche and Lori Arche.

No appearance for Defendant and Respondent James Scallon.

\*          \*          \*

1

Plaintiffs and appellants Daniel Arche and Lori Arche brought an unlawful detainer action against defendant and respondent James Scallon, and the trial court sustained defendant's demurrer without leave to amend and entered judgment against plaintiffs. Plaintiffs appeal, contending the court erred in determining the Los Angeles County COVID-19 Eviction Moratorium (L.A. County Ord., as adopted Feb. 23, 2021, § I, et seq. (LACEM)) was not preempted by state law. As discussed below, we affirm.

BACKGROUND

The unlawful detainer complaint was filed on July 14, 2021, alleging defendant entered into a one-year lease concerning residential property located in Long Beach, California in October 2019, and continued residing at the location under a month-to-month tenancy paying $7,000 monthly rent. Plaintiffs purchased the property in January 2021, and on April 27, 2021, served defendant with a 60-day notice to quit possession. Defendant remained on the property, and plaintiffs in their action requested restitution and possession of the premises, termination of the rental agreement, holdover damages, and reasonable attorney's fees under the agreement. The attached 60-day eviction notice stated, "You are being served with this notice because the owner intends to occupy the premises as their primary residence."

Defendant demurred to the complaint, arguing the LACEM provided that a tenant's eviction was barred unless the eviction was due to a specified just cause reason (LACEM § V.A.2), and none was stated in the complaint. Defendant further maintained the guidelines issued by the Los Angeles County Director of the Department of Consumer and Business Affairs (Director) with regard to the applicability of the LACEM provided that a notice of termination of a tenancy which fell within the scope of the moratorium was "null and void" (L.A. County Ord. adopted Feb. 23, 2021 Guidelines, No. 5.4.A (Guidelines)), and thus leave to amend should not be granted. Plaintiffs filed an opposition, arguing the LACEM was preempted by the COVID-19 Tenant Relief Act (TRA) (Code Civ. Proc., § 1179.05), and that the TRA permitted the action to proceed as a no-fault just cause eviction based on "[i]ntent to occupy the residential real property by the owner" (Code Civ. Proc., § 1179.03.5, subd. (a)(3)(A)(ii)(I); Civ. Code, § 1946.2, subd. (b)(2)(A)(i)). In his reply, defendant argued TRA

2

preemption only applied to any city or county ordinance enacted "in response to the COVID-19 pandemic to protect tenants from eviction based on nonpayment of rental payments" (quoting the Legislative Counsel's Digest to the bill that enacted the TRA, Assem. Bill. No. 3088 (2019-2020 reg. sess.), and the eviction here did not fall within this category.

At the hearing on the demurrer held on September 10, 2021, the court referenced a tentative ruling it provided to the parties wherein it found the LACEM was not preempted and setting forth the court's reasoning.[1] Plaintiffs' attorney argued the LACEM was preempted by the TRA with regard to all evictions, not just ones based on failure to pay rent. The court stated that, consistent with its tentative ruling, it found the moratorium on no-fault just cause termination of tenancies was not preempted by state law, and that given the Guidelines providing an eviction notice not in compliance with the LACEM was "null and void," it sustained defendant's demurrer without leave to amend the complaint.

On September 16, 2021, the court signed an order and judgment of dismissal. Plaintiffs filed a timely notice of appeal of the judgment on October 12, 2021.

DISCUSSION

Standard of Review and Principles of Preemption

The propriety of a court's order sustaining a demurrer without leave to amend is reviewable on appeal from an ensuing judgment or order of dismissal. (*Kong v. City of Hawaiian Gardens Redevelop. Agency* (2002) 108 Cal.App.4th 1028, 1032, fn. 1.) On appeal, "'the complaint is reviewed de novo to determine whether it contains sufficient facts to state a cause of action. [Citation.] In doing so, we accept as true the properly pleaded material factual allegations of the complaint . . . . [Citations.]'" (*Beckwith v. Dahl* (2012) 205 Cal.App.4th 1039, 1049.) De novo review is also appropriate because the issue at hand pertains to statutory interpretation and preemption, and there are no facts in dispute regarding the issues presented on appeal. (*Ceja v. Rudolph & Sletten, Inc.* (2013) 56 Cal.4th 1113, 1119 [questions concerning statutory construction are reviewed de novo]; *Roble Vista Associates v. Bacon*

___

[1] The tentative ruling is not part of the record on appeal.

3

(2002) 97 Cal.App.4th 335, 339 ["Whether state law preempts a local ordinance is a question of law that is subject to de novo review"].)

"'Under article XI, section 7 of the California Constitution, "[a] county or city may make and enforce within its limits all local, police, sanitary, and other ordinances and regulations not in conflict with general [state] laws." [¶] "If otherwise valid local legislation conflicts with state law, it is preempted by such law and is void." [Citations.] [¶] "A conflict exists if the local legislation '"duplicates, contradicts, or enters an area fully occupied by general law, either expressly or by legislative implication. [Citations.]"'" [Citations.]" (*O'Connell v. City of Stockton* (2007) 41 Cal.4th 1061, 1067.)

"There is generally a 'strong presumption that legislative enactments "must be upheld unless their unconstitutionality clearly, positively, and unmistakably appears."' [Citations.]" (*Rental Housing Assn. of Northern Alameda County v. City of Oakland* (2009) 171 Cal.App.4th 741, 752.) Hence, "courts should, if reasonably possible, construe a statute 'in a manner that avoids any doubt about its [constitutional] validity. [Citations.]' [Citations.]" (*Kleffman v. Vonage Holdings Corp.* (2010) 49 Cal.4th 334, 346.) "'[P]reemption by implication of legislative intent may not be found when the Legislature has expressed its intent to permit local regulations. Similarly, it should not be found when the statutory scheme recognizes local regulations.' [Citation.]" (*Big Creek Lumber Co. v. County of Santa Cruz* (2006) 38 Cal.4th 1139, 1157.)

The LACEM Was Not Preempted

The LACEM includes eviction protections not contained in the TRA.[2] As pertinent here, section V.A.2 of the LACEM states, "No-Fault Termination of Tenancy or Occupancy. A Tenant shall not be evicted where grounds for terminating the tenancy or occupancy [are] not based on any alleged fault by the Tenant, including, but not limited to, those stated in Code of

---

[2]The original version of the LACEM was adopted March 4, 2020. On September 28, 2021, the name of the LACEM was changed to "the County of Los Angeles COVID-19 Tenant Protections Resolution." We focus chiefly on the February 23, 2021 version, because the eviction notice was served April 27, 2021, and continue to reference the LACEM, because the name change occurred after judgment was entered.

Civil Procedure section 1161 et seq., and Chapters 8.52 and 8.57 of the County Code.[3] No-Fault termination of tenancy or occupancy also includes the intent to demolish or to substantially remodel the real property." (Underlining and capitalization in original.) The Guidelines provide, "Any notice of termination served to a Tenant subject to the Moratorium on or after March 4, 2020, and during the Moratorium is rendered null and void." (Guidelines, No. 5.4.A.)[4]

In contrast, the TRA allows evictions based on no-fault just cause reasons. Code of Civil Procedure section 1179.03.5, subdivision (a), states, "Before October 1, 2021, a court may not find a tenant guilty of an unlawful detainer unless it finds that one of the following applies," and proceeds to list, inter alia, "(3)(A) The unlawful detainer arises because of a termination of tenancy for any of the following: [¶] [¶] (ii) (I) A no-fault just cause . . . ." (Code Civ. Proc., § 1179.03.5, subd. (a)(3)(A)(ii)(I).)

Plaintiffs contend the version of the TRA in effect at the time the 60-day notice was served in April 2021 preempted the LACEM by stating, "(a) Any ordinance, resolution, regulation, or administrative action adopted by a city, county, or city and county in response to the COVID-19 pandemic to protect tenants from eviction is subject to all of the following: [¶] (1) Any extension, expansion, renewal, reenactment, or new adoption of a measure, however delineated, that occurs between August 19, 2020, and June 30, 2021, shall have no effect before July 1, 2021." (Code Civ. Proc., § 1179.05, subd. (a)(1).)[5] Plaintiffs argue this

---

[3]The Code of Civil Procedure permits evictions for no-fault reasons, including following service of notice after the expiration of a lease term (Code Civ. Proc., § 1161, subd. (a)), and the Los Angeles County Rent Stabilization and Tenant Protections Ordinance also allows evictions based on no-fault reasons (L.A. County Code, § 8.52.090).

[4]The LACEM, § XIII, in a provision titled, "Guidelines and Board Delegations," stated, "The Director . . . or his designee, shall issue guidelines to aid in the implementation of the Moratorium . . . ." Plaintiffs do not maintain on appeal that the Board improperly delegated authority for the Guidelines to be promulgated, or that the Guidelines are otherwise invalid as binding law. (Defendant did not file an appellate brief.)

[5]The TRA was subsequently amended twice to change the applicable dates in Code of Civil Procedure section 1179.05, subdivision (a)(1), so that "Any extension, expansion, renewal, reenactment, or new adoption of a measure, however delineated, that occurs between August 19, 2020, and June 30, 2022, shall have no effect before July 1, 2022." (Stats. 2022, ch. 13, § 2 [enacted effective March 31, 2022].)

5

portion of the TRA indicates the Legislature intended to expressly occupy the field concerning COVID-19 legislation.

The LACEM, as promulgated on February 23, 2021, was a resolution of the Los Angeles County Board of Supervisors (Board) enacted between August 19, 2020, and June 30, 2021, as an effort to protect tenants in response to the COVID-19 pandemic. However, subdivision (b) of Code of Civil Procedure section 1179.05, as it read when the 60-day notice was served, provided, "This section does not alter a city, county, or city and county's authority to extend, expand, renew, reenact, or newly adopt an ordinance that requires just cause for termination of a residential tenancy or amend existing ordinances that require just cause for termination of a residential tenancy, consistent with subdivision (g) of [Civil Code] [s]ection 1946.2, provided that a provision enacted or amended after August 19, 2020, shall not apply to rental payments that came due between March 1, 2020, and June 30, 2021."

In construing a statute, our duty is to first examine the language used, as it is the clearest indication of the Legislature's intent. (See *City of Montebello v. Vasquez* (2016) 1 Cal.5th 409, 419.) Here, under Code of Civil Procedure section 1179.05, subdivision (b), with the exception of local ordinances pertaining to rental payments, ordinances that require just cause for termination of residential tenancies are specifically excluded from the Code of Civil Procedure section 1179.05, subdivision (a), provision indicating local ordinances having no effect before July 1, 2021.

Plaintiffs argue the reference to "an ordinance that requires just cause for termination of a residential tenancy or amend existing ordinances that require just cause for termination of a residential tenancy" in Code of Civil Procedure section 1179.05, subdivision (b), was meant to only reference local rent control laws, such as Los Angeles County Code chapter 8.52. But, such an intent is wholly absent from the language used in the statute, and ""insert[ing]" additional language into a statute "violate[s] the cardinal rule of statutory construction that

6

courts must not add provisions to statutes.'"  [Citations.]"  (*Coble v. Ventura County Health Care Agency* (2021) 73 Cal.App.5th 417, 427.)

The Legislature indicated local laws addressing the pandemic were contemplated to fall within Code of Civil Procedure section 1179.05, subdivision (b), by stating in Code of Civil Procedure section 1179.05, subdivision (f), "It is the intent of the Legislature that the purpose of this section is to protect individuals negatively impacted by the COVID-19 pandemic, and that this section does not provide the Legislature's understanding of the legal validity on any specific ordinance, resolution, regulation, or administrative action adopted by a city, county, or city and county in response to the COVID-19 pandemic to protect tenants from eviction."  To the extent there is ambiguity as to which ordinances were referenced in the statute, the Legislative Counsel's Digest to Assembly Bill No. 3088 points to an intent that only rental payment ordinances enacted to address the COVID-19 pandemic were preempted by the TRA, providing "The Tenant Act would preempt an ordinance, resolution, regulation, or administrative action adopted by a city, county, or city and county in response to the COVID-19 pandemic to protect tenants from eviction *based on nonpayment of rental payments*, as specified."  (Legis. Counsel's Dig., Assem. Bill No. 3088 (2019-2020 Reg. Sess.) Stats. 2020, ch. 37, italics added; see *926 North Ardmore Avenue, LLC v. County of Los Angeles* (2017) 3 Cal.5th 319, 328 ["If the statutory language is not clear, a court may resort to extrinsic sources, like legislative history"]; see also *People v. Superior Court (Lavi)* (1993) 4 Cal.4th 1164, 1178 [Legislative Counsel's Digest is indicative of legislative intent].)

TRA Requirement that an Ordinance be Consistent with Civil Code Section 1962

Plaintiff further argues that, even if the TRA allowed some COVID-19 ordinances to operate when they were in conflict with the TRA, the LACEM was nonetheless invalid, because it did not comply with the requirement that the ordinance be "consistent with subdivision (g) of [Civil Code] Section 1946.2."  (Code Civ. Proc., § 1179.05, subd. (b).)  We reject the argument.

Civil Code section 1946.2, subdivision (g)(1)(B), states that the no-fault, just cause provisions in the statute do not apply with regard to "[r]esidential real property subject to a

7

local ordinance requiring just cause for termination of a residential tenancy adopted or amended after September 1, 2019, that is more protective than this section, in which case the local ordinance shall apply.  For purposes of this subparagraph, an ordinance is 'more protective' if it meets all of the following criteria: [℗] (i) The just cause for termination of a residential tenancy under the local ordinance is consistent with this section. [℗] (ii) The ordinance further limits the reasons for termination of a residential tenancy, provides for higher relocation assistance amounts, or provides additional tenant protections that are not prohibited by any other provision of law. [℗] (iii) The local government has made a binding finding within their local ordinance that the ordinance is more protective than the provisions of this section."

Plaintiffs argue the LACEM failed to qualify under Civil Code section 1946.2, subdivision (g)(1)(B)(iii), because "[t]he language of [the LACEM] does not include any 'binding findings' that it is 'more protective' than [s]tate law."  Plaintiffs appear to maintain that an express finding is required by a local entity in order to comply with Civil Code section 1946.2, subdivision (g)(1)(B)(iii).  However, they cite no authority that such a finding cannot be implied from an entity's enactment, and such a finding is readily apparent in the LACEM.

When the Board, on February 23, 2021, issued the resolution codifying the LACEM, it acknowledged the legislative attention given to tenant relief, and noted that several "tenant protections" (pertaining to evictions due to failure to pay rent caused by the COVID-19 emergency) "have been removed due to preemption."  (LACEM, p. 5.)  The LACEM stated, "the Board desires to extend the Moratorium and its tenant protections, where not preempted, through June 30, 2021 . . . . (LACEM, p. 6).  The Board then proceeded to "PROCLAIM, RESOLVE, DETERMINE AND ORDER" (capitalization in original), and set forth provisions that included in section V.A.2 that "A Tenant shall not be evicted where grounds for terminating the tenancy or occupancy [are] not based on any alleged fault by the Tenant, *including, but not limited to, those stated in Code of Civil Procedure section 1161 et seq.*"  Although not specifically referencing Civil Code section 1946.2 as allowing no-fault just cause evictions to proceed, the ordinance's indication that no-fault evictions were barred even when allowed by state law, in combination with the Board's intent to enact "tenant protections" to the

8

extent they were not preempted by state law, was sufficient to comply with Civil Code section 1946.2, subdivision (g)(1)(B)(iii).

In addition, on November 16, 2021, the Board made an *express* finding that the LACEM has always been more protective of tenants. The Board indicated,

> The COVID-19 Tenant Protections have been extended multiple times by the Board and are currently set to expire on January 31, 2022. Since March of 2020, this Board's intent has been to protect the health, safety, and welfare of its constituents during the COVID-19 pandemic by, among other things, providing protections that are more restrictive, or provide greater tenant protections than State law in areas relating to rent increases, evictions, relocation assistance for displaced tenants, protections against harassment and discrimination of tenants and residential applicants, and other tenant protections. This Board wishes to clarify and reaffirm such intent in the County's COVID-19 Tenant Protections, in part to address an argument recently made in a Superior Court proceeding contending that the protections afforded under the temporary protections do not protect tenants from no-fault evictions due to a lack of specific wording. Although we find this argument meritless as the County COVID-19 Tenant Protections have at all times provided greater tenant protections than State law, such revisions are made to ensure all tenant protections under the County COVID-19 Tenant Protections remain fully available to impacted tenants. (Board resolution Nov. 16, 2021.)

The Board thus approved a resolution "to state that the provisions contained therein are more restrictive, or provide greater tenant protections, than state law, where not preempted, in areas relating to rent increases, evictions, relocation assistance for displaced tenants, protections against harassment, discrimination of tenants and residential applicants, and other tenant protections." (*Ibid.*)

Also, pursuant to a January 25, 2022 Board resolution, the present version of the LACEM states, "A Tenant shall not be evicted where grounds for terminating the tenancy or occupancy is not based on any alleged fault by the Tenant, including, but not limited to, those stated in Code of Civil Procedure section 1161 et seq., *Civil Code section 1946.2 et seq.*, and Chapters 8.52 and 8.57 of the County Code. No-Fault termination of tenancy or occupancy also includes the intent to demolish or to substantially remodel the real property." (LACEM, § VI.A.2, italics added.)

9

We view the November 16, 2021 and January 25, 2022 Board resolutions as stating in express terms what was implied in the February 23, 2021 version of the LACEM: that the Los Angeles County ordinance's COVID-19 tenant provisions were more protective than those provided by the state. Hence, as the resolutions merely constituted a clarification of existing intent, they may properly be applied to the present case. (See *Kern v. County of Imperial* (1990) 226 Cal.App. 3d 391, 400 ["while an intention to change the law is usually inferred from a material change in the language of the statute, a consideration of the surrounding circumstances may indicate merely a legislative intent to clarify the law"]; *Forde v. Cory* (1977) 66 Cal.App.3d 434, 438 [determining that the Legislature intended only to clarify, as opposed to change, existing law where non-substantial amendments of a statute and "statutory events often warrant the inference that the Legislature intended to clarify preexisting law"].)

Failure to Comply with the LACEM's Authorization for Owner Move-In Evictions

Pointing to a June 22, 2021 amendment to the LACEM, plaintiffs maintain that, even if the LACEM was not preempted, the court should have overruled the demurrer because the amendment "expressly permit[s] an 'owner' . . . to evict a tenant in order to move back in." (Capitalization omitted.) Plaintiff's argument lacks merit because the amendment required a greater showing for an eviction than merely stating the owner sought to move in.

The LACEM, as amended June 22, 2021, immediately after the provision barring no-fault just cause evictions, stated, "[A]s of July 1, 2021, a Landlord, who purchased a single-family home on or before June 30, 2021, and seeks in good faith to recover possession of said single-family home for the Landlord's or Landlord's Family Member's own use and occupancy as the Landlord's or Landlord's Family Member's principal residence for at least thirty-six (36) consecutive months, may displace the current Residential Tenant and Residential Tenant's household members in order to move into the single-family home subject to the following conditions." (LACEM § V.A.3 (June 22, 2021 version).)[6] The ordinance proceeded to set forth numerous conditions required in order for an owner move-in to be allowed, including that the

---

[6]On January 25, 2022, the Board extended the LACEM through December 31, 2022.

10

tenant is able to pay rent and does not have COVID-19-related financial impacts; the landlord or landlord's family member who seeks to move in is "similarly situated" as the tenant who will be displaced with regard to age and any disability; the landlord provides a copy of the eviction notice to the Director and discloses to the Director the names of the persons who seek to move in; and the landlord pays the tenant relocation assistance as set forth in regulations. (*Id.* at § V.A.3.(a)-(f).)[7]

The change to the LACEM was effectuated after the 60-day eviction notice was served in April 2021, and there is no indication plaintiffs satisfied any of the section V.A.3 requirements for an owner move-in eviction. Plaintiffs' July 14, 2021 complaint did not allege satisfaction of the requirements. Thus, the June 22, 2021 amendment of the LACEM is not a valid ground to reverse the trial court's determination.

## DISPOSITION

The September 16, 2021 judgment is affirmed. Defendant is to recover costs on appeal.

_____

Ricciardulli, J.

We concur:

_____                    _____

Kumar, Acting P. J.                                              Richardson, J.

---

[7]The Guidelines were amended effective July 1, 2021 to mirror the authorization for owner move-ins and accompanying requirements. (Guidelines, § 6.3.)

11